## MERCHANTS CLUB v. UNITED STATES.
### No. 46304.

Court of Claims.
June 3, 1946.

John C. Reid, of Washington, D.C. (Ivins, Phillips & Barker, of Washington, D.C., on the brief), for plaintiff.

Fred K. Dyar, of Washington, D.C., and Sewall Key, Acting Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

The single issue in this case is whether the plaintiff is a social, athletic, or sporting club or organization within the meaning of Section 1710 of the Internal Revenue Code, and as such subject to the tax therein provided.

Section 1710 of the Internal Revenue Code, 53 Stat. 192, as amended by Sec. 543 (a) of the Revenue Act of 1941, 55 Stat. 687, 711, 26 U.S.C.A. Int.Rev.Code, § 1710, contains the following provision:

"(a) Rate. There shall be levied, assessed, collected, and paid—

"(1) Dues or membership fees. A tax equivalent to 11 per centum of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year."

Section 1711, 26 U.S.C.A. Int.Rev.Code, § 1711, reads as follows:

"Exemptions from Tax

"There shall be exempted from the provisions of section 1710 all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system, or to any local fraternal organization among the students of a college or university."

Taxes for the year 1943 and 1944 in the sum of $12,016.81 were levied and collected by the Collector of Internal Revenue.

Plaintiff filed a timely claim for refund on the ground that such taxes had been illegally collected.

The club was incorporated in 1871 and has operated continuously since that time.

The number of resident members is limited to 375 and the number of nonresident members to 150. The initiation fee for resident members is $150 and the dues $125 a year. The clubhouse is a two-story building, erected for the club, on Thomas Street in New York City.

On the first floor are the office, a barbershop, coatroom, washrooms, lounge, three private dining rooms and a bar. The main dining room, which is 60 feet by 50 feet, and the kitchen, which is 50 feet by 25 feet, are on the second floor. A storeroom, iceboxes, and laundry room are located in the basement. A number of magazines including Time, Life, Fortune, The New Yorker, Esquire, Sketch, Punch, and Illustrated London News, together with several daily papers, the Textile World and the Journal of Commerce, are available in the lounge; there is also a radio.

The main dining room is equipped to seat 154 people. The club serves about 1,000 lunches a week. The gross receipts from the dining room average about $8,000 a month, and those from the bar about $400 a week. Business guests are frequently served. Guest cards are issued to out-of-town visitors. Members' wives rarely visit the club and are not permitted on club premises except in the company of the member. The club is open only on work days during working hours. It opens at 8:00 a. m. The kitchen is closed at 4:00 p. m. and the bar at 7:00 p. m. although frequently for lack of patronage the bartender closes up and goes home about 5:30 p. m.

The club has no facilities for the playing of games. In fact, games of all kinds are forbidden by club rules. It has no dances or similar functions, and is a daytime club. The main use of the club is during the luncheon period. Only occasionally do the members use the club in the morning or after 2:30 in the afternoon unless they are attending a special business meeting in one of the private dining rooms. The club is used extensively for business meetings following the serving of luncheon.

Most of the club's resident members are directly connected with the selling of cotton textiles, only 82 of the 484 active members on January 1, 1945, being engaged in miscellaneous occupations, including insurance, hardware, banking, paper, law, food and other businesses.

While most of the members of the club are in the textile business, the fact that an

individual is in that business gives him no right as such to join the club. Admissions are on the basis of personal accomplishment. Applicants must be acceptable to the general membership and an effort is made to obtain a congenial group who can function together agreeably. Various subjects are discussed during the period when the members are in the clubhouse. Frequently discussions relate to the textile industry in which most of the members are interested, but often the conversations cover a wide range of subjects, and opinions are freely expressed. A spirit of good fellowship prevails and an opportunity is given for indulging in friendly conversation with congenial individuals.

The question is presented as to how the club should be classified within the meaning of the Revenue Law for purposes of taxation.

Section 1710 of the Internal Revenue Code, supra, imposes a tax on any amount paid as dues or membership fees to any social, athletic, or sporting club or organization if the dues or fees of the individual are in excess of $10 a week.

The only exception is set out in Section 1711 and applies to a fraternal society, order, or association operating under the lodge system, or to a local fraternal organization among the students of a college or university.

Manifestly the plaintiff does not fall within the exemption. The question is does it fall within the terms of the taxing section.

■ If it were an issue of first impression we would have some doubt as to the conclusion to be reached. But there is a long line of decisions by this as well as by other courts. In no single instance has a club similar to this one been held subject to the tax. In most cases in which clubs have been held not subject to the tax, there were many more social features than are shown in the instant case. It has been held uniformly that in order to be subject to the tax the social features must be a material part of the club. Chemists' Club v. United States, 64 Ct.Cl. 156; Houston Club v. United States, 58 F.2d 487, 74 Ct.Cl. 640; Whitehall Lunch Club v. United States, 9 F.Supp. 132, 80 Ct.Cl. 350; Tidwell v. Anderson, 2 Cir., 72 F.2d 684. Clubs held subject to the tax have had numerous social, athletic and entertainment features. Army and Navy Club v. United States, 53 F.2d 277, 72 Ct.Cl. 684; Union League Club v. United States, 4 F.Supp. 929, 78 Ct.Cl. 351.

It is true that in the opinion in the case of Duquesne v. Bell, 3 Cir., 127 F.2d 363, the court uses language to the effect that any club where food and drink are served, with conversation on whatever subject pleases the members, is a social organization within the meaning of the statute. But the language was manifestly dictum since the social features of that club were so numerous as to make it clearly taxable. In fact this court has held the same club subject to the tax.

Based on the language used in that decision the Collector of Internal Revenue reversed his previous ruling that the Merchants Club was exempt, and collected the tax which forms the basis of this suit for refund.

In view of the long line of decisions over a period of years, during which period the ruling of the Collector exempted the plaintiff, and during which period the Congress had not seen fit to change the statute in the light of the decisions and rulings, we do not think the Collector was justified in changing his ruling on the basis of language that was not essential to the decision in the Duquesne case.

■ As a matter of fact, the Merchants Club is lacking in many social features found in many luncheon clubs. It is a luncheon club primarily for cotton textile merchants. It provides a place to eat lunch in a district containing no satisfactory public restaurants and it serves as semiofficial headquarters for the selling end of the cotton textile industry. There being no exchange for the marketing of cotton textiles the club is a sort of clearing house of information for that industry. It is open only in the daytime. It is closed on all holidays, Saturdays, and Sundays. Many official meetings and conferences are held there and office and technical problems discussed. Since its organization in 1871, over a period of nearly seventy-five years, no games have ever been allowed, nor any dancing or other forms of entertainment usual in clubs that have such activities as a material purpose.

Food is essential to life. It is not confined to a club. Eating, therefore, can scarcely be classed as a social activity since it is universal and necessary. The discussion of business while at lunch, both in and out of clubs, is a common practice in America. It is almost a habit.

In view of the dearth of social features and the many business activities in this club and the previous rulings of the Commissioner of Internal Revenue, we do not feel that we are justified in reversing a long line of decisions of the various courts in order to make this club subject to the tax, especially in the absence of any changes in the legislation after the rulings had been made.

The predominant purposes of the club are to furnish to its members convenient luncheon facilities on business days, as well as a place where they can hold business meetings and conferences, the social features being incidental to these predominant purposes.

In the light of the decisions and rulings we hold that the social features are not a material part of the Merchants Club.

The plaintiff is entitled to recover the sum of $12,016.81 with interest as provided by statute. It is so ordered.

WHALEY, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.