### RAILROAD–MACHINERY CLUB OF NEW YORK, Inc., v. UNITED STATES.

### No. 48932.

United States Court of Claims.

Decided March 6, 1951.

Alexander H. Elder, New York City, for the plaintiff.

Joseph H. Sheppard, Washington, D. C., with whom was Asst. Atty. Gen. Theron Lamar Caudle, for the defendant. Andrew D. Sharpe and A. F. Prescott, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

On the ground that it is merely a luncheon club and not a social club, plaintiff sues to recover taxes levied on its members for admissions and dues to the club.

From 1924 to 1928 one of plaintiff's predecessors, the Railroad Club, collected taxes on dues and initiation fees from its members and remitted the taxes to the Federal Government. In 1928 it filed a claim for refund, which was allowed. In 1935 the Railroad Club was consolidated with the Machinery Club. The members of the consolidated club were not required to pay taxes until 1942, when, after the decision of the Third Circuit Court of Appeals in Duquesne Club v. Bell, 127 F. 2d 363, 143 A.L.R. 1377, the Commissioner required it to collect taxes.

Then in 1946 the Deputy Commissioner of Internal Revenue notified plaintiff that it was not a social, athletic or sporting club and was not subject to the tax. Whereupon, plaintiff filed a claim for refund; but in the meantime the First Circuit Court of Appeals in Turks Head Club v. Broderick, 166 F.2d 877, had held that clubs similar to plaintiff were obliged to collect the tax, and following this decision the Commissioner of Internal Revenue disallowed the claim. This suit followed.

One of plaintiff's predecessors, the Railroad Club, occupied the 21st floor and about one-third of the 22d floor of the Hudson Terminal Building, 30 Church Street, New York City. Plaintiff's other predecessor, the Machinery Club, occupied the other wing of the Hudson Terminal Building at 50 Church Street. The operation of the two clubs was not financially successful and they merged in 1935 under the name of the Railroad-Machinery Club of New York, Inc., and the consolidated club thereafter occupied the 21st floor and a part of the 22d floor of the Hudson Terminal Building, 30 Church Street, New York City.

The large majority of the members of the consolidated club were composed of people dealing in railroad supplies, in machinery and tools, and of certain manufacturers of such things. A sizable number of its members were engaged in operating railroads and utilities, and another large segment of its membership was engaged in railroad and steamship engineering and construction. The remaining members were engaged in various activities.

This latter miscellaneous group accounted for a little more than 20 percent of plaintiff's members. About 50 percent of its members were people engaged in the sale of railroad supplies, machinery, and tools, and in manufacturing. The rest were railroad and utility people.

The consolidated club had no predominant business purpose. It was designed primarily to afford a convenient place for its members to get together for luncheon for either social intercourse or to discuss business at that time. It had a number of private dining rooms which could be retained for either social or business purposes. It had a large lounge, attractively furnished, with quite a number of business magazines, and, in addition, such magazines as Time, Life, Esquire, the New Yorker, Colliers, the Saturday Evening Post, Punch, Sketch, the London News, and morning and afternoon newspapers.

In addition to the private dining rooms, it had a grill room accommodating about 150, and a dining room that would accommodate 200 or so.

All of this was on the 21st floor. In addition, the club occupied about one-third of the 22d floor. This floor, except for the manager's office and employees' dining and locker rooms, was designed for the wives, daughters, etc., of the members, but by special arrangement other ladies and their guests could use it, although not of the household of a member of the club. These quarters were quite attractively furnished. There was a lounge, where cocktails were served, and a dining room.

On the 21st floor there was a bar 38 feet long, with tables and chairs, where drinks were served. Two bartenders attended this bar. One came on duty at 10 a. m. and left at 2 p. m. The other one came on at 11 a. m. and left at 3:30 p. m. From 3:30 p. m. to 7 p. m. service at the bar was provided by the assistant manager of the club. At the bar there were furnished the usual concomitants of crackers, pretzels, cheese, salted peanuts, etc.

There is no question but that this club was organized primarily as a place for the service of lunch to its members, and its membership was composed chiefly of people engaged in certain related lines of business; we cannot say, however, that it was formed for business purposes only, nor that the social features of the club were not one of its "material purposes."

The test of whether or not a club is taxable as a social club is set out in section 101.25 of Treasury Regulations 43 (1941) which reads in part as follows:

"Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Code, *unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example,* religion, the arts, or *busi-*

*ness.* The tax does not attach to dues or fees of a religious organization, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but, if the social features are a material purpose of the organization, it is a 'social * * * club or organization' within the meaning of the Code. * * * [Italics ours.]"

We do not think it can be said that the predominant purpose of this club was a business one. It was composed of businessmen, but it was not organized for the promotion of any particular business. It was organized to give these businessmen a convenient and congenial and comfortable place where they could relax at noon and eat their noonday meal.

Certainly, that part of the club which was set aside for the ladies, a large percentage of the entire space occupied, could not be said to have been for a business purpose. This part of the club, at any rate, was undoubtedly maintained for a social purpose. It is, of course, true that the large majority of the club's activities were confined to the 21st floor, where women were not admitted, but it can hardly be said that social features were not a material purpose of the club when so much of its space was devoted to the wives and other ladies of the members' households.

Moreover, more than 20 percent of the revenue of the club was derived from the sale of liquors. Not only is this true, but the revenue from the sale of liquors offset the losses sustained from the other operations of the club. Except for the operation of the bar, the club could not have maintained itself financially. In the year 1949 the restaurant lost $3,369.27, and the cigar counter $451.91; but this was offset by a profit on the operation of the bar of $12,387.84, and of the barber shop of $29.64. In 1950 all branches of the club's operations lost money, except the bar, which made $9,172.81.

The bar "carried" the club. Certainly it could not be said to be a merely incidental feature of the club. The drinking of liquors at such a place as this is of course a social affair, although it may sometimes serve a business purpose. Since it played such a large part in the maintenance and the life of the club, we cannot say that it was not a material purpose of the club.

We see but little distinction between this case and Uptown Club of Manhattan v. United States, 83 F.Supp. 823, 113 Ct. Cl. 422, 432, Id., 338 U.S. 823, 70 S.Ct. 70; Bankers Club of America v. United States, 87 F.Supp. 253, 115 Ct.Cl. 50, and Drug and Chemical Club of New York v. United States, 115 Ct.Cl. 66, Id., 340 U.S. 810, 71 S.Ct. 37. It differs from the case of Merchants Club v. United States, 66 F. Supp. 126, 106 Ct.Cl. 562, only in that case it appeared that that club was organized primarily for the promotion of the textile industry. The Railroad-Machinery Club does not seem to have been organized for the promotion of any particular industry, although it was organized to afford a convenient meeting place for members of the railroad industry and also for those engaged in the sale of machinery and allied industries.

At all events, we are persuaded that any club which maintains a bar, from which it derives so large a part of its revenue, and maintains quarters for the wives and others ladies of the members' households, must be said to be a club whose social features were one of its material purposes.

Plaintiff's petition is dismissed.