Whitaker, Judge,
delivered the opinion of the court:
The question presented here is whether the members of this club are members of a social club and, therefore, subject to tax on initiation fees and dues paid to the club. The test is whether the social features of the club are a material purpose of its organization and maintenance or whether they are only incidental to a predominant purpose not social, such as religion, the arts, sciences, or business.
In its certificate of incorporation the incorporators stated that the objects for which the club was being formed were “the social and mutual benefit of the members thereof and to provide for such members a pleasant place of common resort for entertainment.” If the club continued to seek these objects it was certainly a social club.
However, in 1944, some 51 years later, the club adopted bylaws which read in part:
The purpose of the Club shall be to establish and maintain quarters and accessories wherein its members, their associates, clients and business friends may obtain their meals and have available private rooms suitable for business conferences.
If these bylaws expressed the only purpose of the club, it would seem that its social features were only incidental, but, as we shall later see, this was not the only purpose of the club.
Any male person, twenty-one years of age and of good character, was eligible to membership in the club, but all of its 1,088 members, resident and nonresident, except 67, were connected with the textile industry. It was used primarily at the luncheon hour, and to a much lesser extent in the late afternoon. Members met for luncheon either to discuss busi *249 ness or for social intercourse, as they might choose. Members met in the afternoon either for business or for social intercourse.
Ladies were admitted to the club, but there were no private quarters for them other than a powder room.
The club had five standing committees: house, finance, membership, affiliations, and entertainment. The extent of the activities of the entertainment committee is not shown, but this committee was one of the five standing committees, and it was continued even after the aforementioned bylaw was passed. This would indicate, of course, that the purpose of the club was not limited to business meetings.
The quarters of the club consisted of a lounge, a large dining room, and three private dining rooms, and a bar. There were no card rooms, billiard or other rooms for the playing of games.
The bar was in a room 32 feet by 32 feet. It was 20 feet long, with a brass rail. There were also tables in this room capable of seating 49 people, and there was also a wall seat. Both food and drinks were served in this room. Drinks were served also in the lounge in the afternoon, and sometimes at noon, and in the dining rooms at noon.
The club was only open on business days, and only until 7: 00 in the evening.
The club was run for business men of the textile industry, and was availed of largely for business purposes, but we cannot say that its social features were not a material purpose. We say this because, first, this was one of the stated purposes of its organization, which was never abandoned, as evidenced by the continuation of the entertainment committee, even after the passage of the bylaw aforementioned; second, because ladies were entitled to the privileges of the club; and, lastly, because 29 percent of the income of the club was from the sale of liquor. Indeed, except for the sale of liquor the club would have operated at a loss. On all operations, except the sale of liquor, a small loss was sustained, but it realized a profit of $24,844.99 from this source. The drinking of liquor is essentially a social function, ostensibly so, at any rate. Railroad Machinery Club v. United States, 118 C. Cls. 542, 560-561.
*250 All of these cases must be decided on their own facts, but we think this decision is not out of harmony with the following cases: Turks Head Club v. Broderick, 71 F. Supp. 272 (R. I.), aff’d., 166 F. 2d 877; Uptown Club of Manhattan v. United States, 113 C. Cls. 422, cert. den. 338 U. S. 823; Bankers Club of America v. United States, 115 C. Cls. 50; Drug and Chemical Club of New York v. United States, 115 C. Cls. 66, cert. den. 340 U. S. 810; Merchants and Manufacturers Club v. Campbell, 91 F. Supp. 798 (N. D. Ill.); Railroad Machinery Club v. United States, 118 C. Cls. 542.
This case differs from Merchants Ol/ub v. United States, 106 C. Cls. 562, in this important respect: the charter of the Merchants Club said nothing about entertainment, but, together with the resolution of its incorporators, showed that it was organized for a business purpose;[1] on the contrary, the charter of the Arkwright Club and the maintenance of an entertainment committee as one of five standing committees show that its social features were a material purpose of its existence.
Plaintiff is not entitled to recover. Its petition will be dismissed.
Littleton, Judge; and Jokes, Chief Judge, concur.

 This resolution read:
“We, the undersigned, having long recognized the need of a place downtown where, as merchants, we could meet for the familiar interchange of business views as well as obtain facilities for economical and agreeable lunch and dining rooms, have undertaken to organize an association to be called The Merchants Chib, * *