**DOWN TOWN ASSOCIATION OF CITY OF NEW YORK, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 191, Docket 25903.**

United States Court of Appeals
Second Circuit.

Argued March 10, 1960.

Decided May 2, 1960.

Timothy N. Pfeiffer, New York City (Milbank, Tweed, Hope & Hadley and Rebecca M. Cutler, New York City, of counsel, on the brief), for plaintiff-appellant.

Joseph M. Field, Asst. U. S. Atty., New York City (S. Hazard Gillespie, Jr., U. S. Atty., New York City, on the brief), for defendant-appellee.

Before CLARK, WATERMAN and LEWIS,* Circuit Judges.

LEWIS, Circuit Judge.

Appellant brought suit on behalf of its members to recover taxes collected by appellant from its members and remitted to the Collector of Internal Revenue for the period between August 1942 and March 1947, in compliance with the directive of Section 1710(a) (1) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 1710(a) (1) [1] The trial court ruled that the social aspects of the service maintained by the appellant make it a social club within the terms of that section and dismissed the complaint with costs. Appellant challenges that finding.

The major facts were stipulated: The Down Town Association of the City of New York is a New York corporation, incorporated in 1860 for the purpose of furnishing "to persons engaged in commercial and professional pursuits in the City of New York, facilities for social intercourse, and such accommodations as are required during the intervals of business while at a distance from their residences, also the advancement of literature and art, by establishing and maintaining a library, reading-room and gallery of art, or by such other means as shall be expedient and proper for such purpose." However, despite the stated objects at the time of organization, it is agreed that the literary and artistic aspects of the club have not been promoted and that the activities of appellant for the past forty years have been restricted almost exclusively to serving luncheon on working days from 12:00 noon until 2:30 p. m.

The appellant owns the clubhouse at 60–62 Pine Street, which is a five story building. The first floor contains a lobby, a smoking room, and a small bar at which cocktails and hors d'oeuvres are served; the second floor, two large dining rooms and a library where members and guests are served coffee and read an assortment

---

* Of the Tenth Circuit, sitting by designation.

1. § 1710 "(a) There shall be levied, assessed, collected, and paid—
"(1) A tax equivalent to 11 per centum of any amount paid as dues or member- ship fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year."

of magazines and daily newspapers; the third floor, three dining rooms; and the fourth floor one large dining room and six private rooms. The fifth floor houses the utility rooms necessary to the clubhouse's operation. The bar is open during the hours the clubhouse is open, 8:00 a. m. until 4:00 p. m. except Sundays and holidays but is rarely used except during the early part of the luncheon hours. Liquor sales were approximately eight per cent of food sales during the period under examination.

Membership in the organization is obtained by application, election, and payment of an entrance fee of $300 and yearly dues. The sole restriction on availability of memberships is a limitation as to the number who might join, and the occupations of the members, although predominantly lawyers, cover numerous fields.

A candidate for membership is passed upon by the governing board of fifteen "Trustees and Managers" by ballot, and this board also controls the internal affairs of the Association.

There is no Association rule prohibiting members from bringing their wives or others to the house of the Association, but members rarely do so, and members with lady guests are limited to the use of the dining room on the third floor or the private dining rooms. Wives, other family members or lady guests are not permitted except in the company of the member.

The Association has never sponsored a party, dance or similar function; there are no facilities for games such as cards or billiards, nor, in fact, a radio or television set.

For several years prior to 1929, appellant paid taxes on its members' dues under statutes preceding Section 1710 taxing dues of social, sporting and athletic clubs, which payments were returned in full in 1929 by The Commissioner of Internal Revenue. Thereafter and until August 21, 1942, no taxes were required from appellant, but on that date appellant was notified that it must collect and remit taxes on membership dues thereafter.

Between August 1942 and March 1947, taxes were paid in the amount of $129,090.87; claim for refund of this amount was rejected by the Commissioner of Internal Revenue, and this suit followed.

The trial court after reviewing the stipulated facts and testimony which showed that many members used the club in connection with their various businesses, stated:

"This Court has little doubt that the time of many of the members spent in the clubhouse is at least partly devoted to discussions of their business. Indeed we are ready to find that some busy lawyers and business executives find the ordinary business day too brief for their work and that their luncheon hour is at times necessarily devoted to such of their work as consists of discussions that can be had away from their desks. Such discussions serve the member's purpose. While the club of course makes no effort to procure company for a member, its only reason for being is to afford those members a facility for enjoying lunch in convenient and pleasant surroundings and with company attractive to them. We call such a purpose altogether social. Plaintiff has no 'different or predominant' purpose required by the regulation."

The regulation to which reference is made is U. S. Treasury Regulation 43, § 101.24-.25, 26 C.F.R. §§ 101.24-.25:

"101.24. *Determination of character of club.* The purposes and activities of a club or organization and not its name determine its character for the purpose of the tax. Every club or organization having social, athletic, or sporting features is presumed to be included within the meaning of the phrase, 'any social, athletic, or sporting club or organization,' until the contrary has been proved, and the burden of proof is upon it. * * * "

"101.25. *Social clubs.* Any organization which maintains quarters or arranges periodical dinners or

meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Code, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but if the social features are a material purpose of the organization it is a 'social * * * club or organization' within the meaning of the Code. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is clearly not a 'social * * * club or organization.' * * * "

Although the cases interpreting the statute and regulation are many, see 143 A.L.R. 1381; 80 A.L.R. 1296, most of them seek to resolve the question of whether a club originally organized for a philanthropic or business purpose depends upon its social activities for its existence. The question here is considerably narrowed by the stipulation and as presented becomes whether a businessman's luncheon club, serving no other function of entertainment, is by definition a social club.

■ The recitation in the articles of incorporation that one of the purposes of the corporation is to furnish opportunity for social intercourse is not conclusive of the determination, Century Club v. United States, 12 F.Supp. 617, 81 Ct.Cl. 878; Union Club of Pittsburgh v. Heiner, 3 Cir., 99 F.2d 259, for indeed it is recognized that any organization, regardless of its compelling purpose for existence, provides the means of social

intercourse, United States v. McIntyre, 4 Cir., 253 F.2d 728, 729. In Tidwell v. Anderson, 2 Cir., 72 F.2d 684, 687, it is stated:

"The test of taxability is not whether a club has any social features at all, but whether or not such activities, viewed, of course, in the light of all the circumstances of its existence including the declared purpose of the organization as shown by its constitution and by-laws, if their provisions are enforced, are what in fact provide the real reason for its existence and enable it to secure members and retain them. Another way to put the problem is 'whether the social features of the club involved are merely incidental or whether, on the other hand, they are a material purpose of the organization.' Union League Club of Chicago v. United States, supra. [4 F. Supp. 929, 78 Ct.Cl. 351.]"

■ In the present case, the stated artistic purposes of the club have been abandoned and the social features of the club beyond the week-day congregation for lunch are minimal. Many cases wherein a luncheon club has been held taxable rest on the basis of additional social features, and each case and each club is individualized by the particular arrangement made by the members for the benefits they seek. See Rockefeller Center Luncheon Club v. Johnson, D.C.S. D.N.Y., 131 F.Supp. 703; cf. Downtown Club of Dallas v. United States, 5 Cir., 240 F.2d 159; Century Ass'n v. Anderson, D.C.S.D.N.Y.1935, 10 F.Supp. 1005. We consider, therefore, only those cases which have spoken to the precise point of whether a businessmen's luncheon club is necessarily a social club.

The Third Circuit in Duquesne Club v. Bell, 127 F.2d 363, 366, 143 A.L.R. 1377, has held such a club to be social in nature, Judge Goodrich stating:

"We are prepared to say that an organization, whether incorporated or not, which provides an opportunity for its members to meet each other at mealtimes and partake to-

gether of food and drink with conversation on whatever subject pleases them is a social organization. This assumes, of course, an organization the main purpose of which, as is true here, is not other than to provide such an opportunity. Elaborately comfortable quarters may add to the enjoyment of the occasion but do not change its nature. If the members play games together, invite outside guests, either men or women, or add any of the countless things with which people amuse themselves, again the social program becomes more elaborate, but is no more a social program than that of the luncheon of a dozen men about a table without the additional features * * * "

Appellant asserts that the facts of the Duquesne Club case would support a holding of taxability without the above statement which it considers gratuitous dicta, Rockefeller Center Luncheon Club v. Johnson, supra; Merchants Club v. United States, 66 F.Supp. 126, 106 Ct.Cl. 562, but the reiterations of this distinction do not make it so and the limitation on the activities of the Duquesne Club are clearly set forth in the opinion and are similar to those here before us. Additionally, the Third Circuit expressly overruled Union Club of Pittsburgh v. Heiner, supra, holding that a business luncheon club was not taxable, even though it had incidental social features beyond luncheon. The members of the Duquesne Club were engaged in diversified businesses, as here, and testified that they used the club luncheons for their individual business purposes, as here. Of this contention, the Third Circuit Court queried, 127 F.2d at page 366:

" * * * Does the fact that some or many of the members use the club, especially at noon, to talk with others the problems of their own particular business as well as eat their lunch make the club a business and not a social club?

"We think it does not, and for two reasons. One is that conversations around dining tables of the individual members upon whatever subject they choose to talk about while they eat has nothing to do with club activity at all. All the club is doing is to provide excellent and enjoyable facilities for these meetings to take place. The second reason is that even if the sole test were whether the activities which were going on in the club were more than incidentally social, there is no proof, and no way of proving, that of the $238,000 worth of food dispensed and the $89,000 worth of beverages consumed in one year, only an incidental portion was over social as distinguished from business enterprises."

Appellant urges that the First Circuit's decision in Turks Head Club v. Broderick, 166 F.2d 877, should not be considered because that court dismissed for procedural defects and then discussed the merits, overruling its prior case of Page v. Squantum Ass'n, 1 Cir., 77 F.2d 918. Since the procedural defect was immediately remedial, the court's disposition of the case on the merits was effective to prevent further litigation by endorsing the reasoning of the Duquesne Club case:

" * * * The argument is that eating 'can scarcely be classed as a social activity since it is universal and necessary.' 66 F.Supp. at page 129.

"But if one invites friends to dinner, the occasion is a social one, in common parlance, whether the guests are moved to acceptance by contemplation of the fine meal they will have or of the pleasant company wherewith to beguile away the time. And so, it seems to us, when a group of men get together to form a club for the major purpose of furnishing private quarters of attractive outlook where carefully screened congenial spirits, and members of their families and guests, can partake to-

gether of food and drink, they have formed a 'social club' in the everyday use of language, and in what we think must have been the sense of Congress in imposing this luxury excise tax. Eating is a universal human necessity. But eating in a select company in such agreeable environment as the Turks Head Club is a luxury. * * * " [166 F.2d 883]

Contrasted with these views are the holdings of the same and other courts prior to the 1942 Duquesne decision and cases from the Court of Claims both before and after that decision. See Century Club v. United States, supra.

The Court of Claims rejected the Duquesne doctrine in Merchants Club v. United States, supra, stating that eating cannot be classed as a social activity, nor as a business activity, Uptown Club of Manhattan v. United States, 83 F.Supp. 823, 113 Ct.Cl. 422. More recently, that court cited the Turks Head Club case, supra, with approval although it has not overruled the Merchants Club case, supra; Arkwright Club of City of New York, Inc. v. United States, 117 F.Supp. 411, 127 Ct.Cl. 247. It has been able to distinguish the case where additional social features are present, Railroad-Machinery Club of New York, Inc. v. United States, 95 F.Supp. 822, 118 Ct.Cl. 542, and has refused application of the Merchants doctrine to a club composed of men in a variety of businesses, Uptown Club of Manhattan v. United States, supra.

Thus it appears that under recent cases from the Court of Claims, regardless of distinctions which might be drawn concerning greater or lesser amounts of entertainment provided and drinking done, that court would not find the predominant business purpose which would avoid the conclusion that a club organized to serve luncheons to businessmen with diversified business interests is a social club.

Appellant points out, however, that it need not prove that the motivation for the formation of the club was business, but that the government must show that its continued existence is due to its social activities, citing the language of Tidwell v. Anderson, supra, 72 F.2d at page 687:

"It should be noticed that the statute does not tax clubs generally. Only social, sporting, and athletic clubs are taxed. The issue is not one of exemption from a tax but rather one of the scope of the statute. * * * "

The courts have long struggled to draft a definition of *social* serving the legislative intent in enacting the statute, see Army & Navy Club of America v. United States, Ct.Cl., 53 F.2d 277; Duquesne Club v. Bell, supra; Judge Hand's dissent in Tidwell v. Anderson, supra, without coming to a satisfactory conclusion because by dictionary definition the word is concerned with all human interrelationships. For this reason, then, the somewhat negative approach of the regulations have served to draw the line between a social club and one of another purpose. The congregation of people together into an association creates a social club unless their aggregation is shown to be for a definite mass purpose other than the desire of human beings to seek companionship. Even under the line of cases from the Court of Claims, eating supports no conclusion of any purpose and we are left merely with a group of people in a social organization unless we accept the conclusion of the Rockefeller Center Luncheon Club case, supra, that the individual business motivations of members would classify the club as a business club. This has been rejected by the majority of recent cases.

"It would seem to be more consistent with the purpose of this legislation to say that an organization is a social club if its activities are largely social, even though the actuating motive of the members in joining was to secure business contacts, than to call such an organization a business club because its members are engaged in business, or they joined the club to secure, through its

social activities, business contacts."
Fleming v. Reinecke, 7 Cir., 52 F.2d
449, 80 A.L.R. 1293.

The judgment of the trial court is affirmed.