**DOCTORS' CLUB OF HOUSTON,
TEXAS, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 11903.**

United States District Court
S. D. Texas,
Houston Division.

May 2, 1960.

Vinson, Elkins, Weems & Searls, Houston, Tex., John G. Heard, Houston, Tex., for plaintiff.

Howard A. Heffron, Acting Asst. Atty. Gen., James P. Garland, Myron C. Baum, and John F. Murray, Attorneys, Department of Justice, Washington, D. C., William B. Butler, U. S. Atty., and Arthur L. Moller, Asst. U. S. Atty., of Houston, Tex., for defendant.

INGRAHAM, District Judge.

This is an action brought by the Doctors' Club of Houston against the United States of America seeking refund of federal excise taxes paid upon the imputed dues of honorary members therein in the amount of $1,858 for the period from July 1, 1954, through December 31, 1956. The case was tried before the court without a jury and is submitted for judgment upon the briefs of the parties.

The question is whether plaintiff was a *social athletic, or sporting club* or organization during the tax years in question within the meaning of Section 1710(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1710(a) (1) and Section 4241(a) (1) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4241(a) (1). For these years excise taxes were assessed and collected from plaintiff's regular members on their dues and from plaintiff itself upon the dues imputed to 37 honorary members. Title 26 U.S.C.A. § 4241(a) (1) states:

"(a) Rate.—There is hereby imposed—

"(1) Dues or membership fees.— A tax equivalent to 20 percent of any

amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident member are in excess of $10 per year." [1]

Although the term "social club or organization" is not defined by statute, Treasury Regulations propounded pursuant to the predecessor section of Section 4241 provide an insight into the meaning of these terms. These regulations provide:

"Social Clubs. Any organization which maintains quarters or arranges periodical dinners or meetings for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Code, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but if the social features are a material purpose of the organization, it is a 'social * * * club or organization' within the meaning of the Code. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is clearly not a 'social * * * club or organization.' * * * " Treasury Regulations 43, Section 101.25 (1941).

The Doctors' Club of Houston was organized on May 25, 1954, as a private corporation of the State of Texas. Its membership is confined principally to physicians and dentists who are fellows in good standing of the Harris County Medical Society or the Houston District Dental Society. Similarly, qualified persons who reside outside Harris County may become nonresident members so long as they remain in good standing in their local medical or dental society. Plaintiff club also maintains an honorary membership for benefactors of the Texas Medical Center and for persons who have made outstanding contributions to scientific medicine.

The initiation fee for both resident and nonresident members is $35 or $200 depending upon the individual member's years of membership in his local medical society. Thereafter resident members pay monthly dues of $10, while nonresident members pay annual dues of $15. Honorary members are not required to pay either an initiation fee or regular dues.

Plaintiff leases space on the third floor of the Jesse H. Jones Library Building in the Texas Medical Center. The physical facilities of the club consist of a main dining room with wings that can be used separately, a lounge and bar, kitchen, and manager's office. On the same floor of the Library Building, outside plaintiff's premises, are an auditorium seating approximately 600 persons, two small conference rooms and restroom facilities. Plaintiff's hours are from 11 A. M. to 11 P. M. with two exceptions. It is open until midnight on Saturdays and is closed on Tuesdays. Plaintiff serves lunch each day, except Sundays, between the hours of 11 A. M. and 2 P. M. Dinner may be ordered until 9:15 P. M. A member's family and guests are permitted to use plaintiff's facilities.

Plaintiff is organized and operated for the protection and advancement of the professional interests of persons licensed to practice medicine and dentistry. It advocates the advancement and encouragement of research in the sciences related to medicine and the advancement of cooperation between its members and the Texas Medical Center and its component institutions. It seeks to advance

---

1. Section 1710(a) (1) is identical in material part.

the interest of and to facilitate use by its members of the Jesse H. Jones Library of the Houston Academy of Medicine. The original purpose clause of its charter, which was amended on April 24, 1956, to reflect the above named purposes, was to support and maintain a social club for the promotion and encouragement of a closer social relationship for its members and the promotion of innocent sports and amusements and recreational facilities by and between its members and cultivation of the higher ideals of life. Plaintiff's witnesses testified that this originally expressed purpose did not reflect the original and continuing purpose of the club as a professional and scientific organization and that any social activities were merely incidental and ancillary to that primary purpose.

The primary purpose of plaintiff's operation certainly has been to provide a common ground upon which professional men may gather to exchange ideas and discuss and evaluate advances in medicine in a scientific atmosphere. Prior to plaintiff's organization, the many medical and dental groups in Harris County were compelled to hold their meetings in inadequate quarters and had difficulty in retaining the interest and attendance of their members. The scientists, doctors, and dentists working within the Texas Medical Center had no adequate facilities available for meetings, conferences, and lectures.

The idea to form a professional medical club arose at a session of the Houston Academy of Medicine (the holding company of all properties of the Harris County Medical Society) in 1950 or 1951, several years before the completion of the Jesse H. Jones Library Building. The Library was constructed to house the consolidated medical and dental library, to furnish a hub for the many medical activities of the Texas Medical Center, and to provide office and meeting space for the Harris County Medical· Society and the other major medical and dental organizations in Harris County.

Plaintiff's location on the third floor of the Library, directly across from the auditorium, was planned so that all meeting facilities would be on the same floor and so that members might eat and proceed to their meetings with a minimum of delay or interference from outside sources. By providing dining and meeting facilities in a single location, it was believed that attendance at professional meetings would be greatly increased. By establishing a convenient, centrally located meeting place, it was believed that interchange would be stimulated between the practicing physicians and dentists, the medical scientists and technicians, and the medical and dental professors engaged primarily in educational work. Forty-six separate medical and dental organizations use the club quarters as a meeting place. (Plaintiff's Exhibit No. 4). Plaintiff has fulfilled the expectations of its founders in these respects.

On October 23, 1956, plaintiff filed with the Commissioner of Internal Revenue form 1024, Exemption Application. (Plaintiff's Exhibit No. 2). This request was made by plaintiff to gain exemption from income tax under Section 501(c) (6) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 501(c) (6), which exempts "business leagues, chambers of commerce * * * not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder." The Commissioner granted the exemption on December 20, 1956. At the trial of this action plaintiff offered as its Exhibit No. 2 the documents relating to this exemption. Defendant objected to their introduction, and the court withheld its ruling on admissibility and took the matter under advisement. The court believes that these documents may be admitted in evidence and have some probative value concerning plaintiff's purposes but does not consider that they affect the decision in light of other evidence.

Plaintiff's social activities centered around the dining table, the lounge and bar, and the dance floor. These activities constituted 10 to 16 percent of plaintiff's activities on the basis of the number of participants. Members may join

the locker pool if they wish to drink on the club premises. The locker pool charges a member a certain amount for each drink consumed plus a service charge. The books of the locker pool are kept separate from the other records of the club in conformity with the liquor laws of the State of Texas. Plaintiff derived a substantial income by charging the locker pool a monthly rental.

Saturday night dances were held at the club plus annual New Year's Eve dances and a first anniversary dance. Sometimes these dances were held in conjunction with a buffet or dinner. The weekly dances would be superseded though by any conflicting medical function, such as a Saturday meeting of a medical or dental group. Various social groups occasionally were allowed to hold dances on plaintiff's premises. Children's birthday parties and wedding receptions were held at the club but were discontinued by the Board of Governors during the tax years in question. Birthday cakes appear to have been presented at dinner however throughout the period.

During the football season plaintiff organized expeditions to attend the Rice Institute home games. For an afternoon game a pre-football buffet would be held before the members were taken by chartered bus to and from the game. For a night game a midnight breakfast would follow bus service to and from the stadium. There were six such events in each of the years 1955 and 1956.

Plaintiff's dining facilities were substantially used by ladies, though not all of them were wives or guests engaged in social activities. Meetings of the auxiliaries of various medical organizations and nursing staffs were held on plaintiff's premises. Four fashion or style shows were held but only in connection with luncheon meetings of medical auxiliaries for the purpose of raising funds. Furthermore, plaintiff's facilities are used regularly by female technicians and members of the medical and dental professions. Some ladies' bridge parties were held in the afternoon but these were discouraged.

Plaintiff contends that its predominant purpose is scientific, educational and professional and that the small use (10–16 percent) of its facilities for social activities indicates that those activities do not form a major or even a material part of the total activities. This limited amount of social activity, plaintiff maintains, is evidence of the absence of any social purpose in its organization or operation. It claims that it is not a social club within the meaning of Section 1710(a) (1), Section 4241, or Regulations 43 (Section 101.25). It admits that the honorary members must be accorded the same tax treatment as the regular members and rests its case upon its status as a professional rather than a social club.

Defendant contends that plaintiff's purpose is not only materially social, but predominantly so, and that the Internal Revenue Service was clearly correct in finding that plaintiff was subject to the excise tax on imputed dues of honorary members. It maintains that plaintiff engaged in such frequent and continuous social activities during the tax years in question that it could only be considered a social club. It claims that honorary memberships in a social club are subject to the excise tax imposed by Section 1710 (a) (3) and Section 4241(a) (3), since honorary memberships of indefinite duration are considered to be life members taxable under these sections by the regulations and cases.

The court believes that plaintiff's predominant purpose is scientific, educational and professional and that the social activities were only incidental thereto during the tax years in question and were not a material purpose of the organization. The imputed dues of honorary members, therefore, are not subject to excise tax, and the sum of $1,858 collected as excise tax on said memberships for the tax years in question should be refunded.

██ Whether an organization is to be classified as a social club or a business or professional club is a question of fact in each case to be determined from the

many circumstances surrounding the operation and activities of the organization. Cosmos Club v. United States, 1930, 42 F.2d 331, 70 Ct.Cl. 366; Downtown Club of Dallas v. United States, 5 Cir., 1957, 240 F.2d 159; Engineers' Club of Dallas v. United States, 5 Cir., 1958, 251 F.2d 52. The various decisions concerning this question show how social activities were construed under the circumstances of each case and what inferences may be drawn therefrom.

■ Certainly there is sufficient evidence of a predominant scientific and professional purpose to facilitate interchange of ideas through personal contacts and group meetings. There is no failure to adduce evidence of sufficient activities in furtherance of plaintiff's stated purpose, as the court found in Downtown Club of Dallas, supra.

Few of the usual trappings of a social club are present in the case at bar. The dining and lounge facilities are limited. There is no swimming pool, golf course, tennis court, rooming facility, or other athletic or recreational facility. Plaintiff maintains no reciprocal club privileges with any other club in Houston or elsewhere. The requirements of membership are professional, rather than social. No member in good standing of the Harris County Medical Society or the Houston District Dental Society has been refused membership.

It is clear that the serving of food and drink alone does not classify an organization as a social club. As stated by the Court of Claims, "eating as such is not a social activity * * * But neither is it a business activity. People eat whether at work or at play." Uptown Club of Manhattan v. United States, 1949, 83 F.Supp. 823, at page 830, 113 Ct. Cl. 422. Though some cases consider the drinking of liquor as essentially a social function, many people regard liquor as a natural concomitant of their meals and desire such beverages while engaged in social or professional activities, much as smokers desire tobacco. A court cannot infer a social purpose from the service of liquor alone.

Substantial use by ladies of club facilities likewise is considered to be a mark of a social club. Downtown Club of Dallas v. United States, supra. In the case at bar, however, it is difficult to separate the activities of medical auxiliaries and nursing staffs, engaged in charitable or professional endeavors, from the social activities of wives and lady guests. Furthermore, the court has observed that women, especially wives, can infiltrate any organization that absorbs the time and resources of their men. That plaintiff has been only partially successful in stemming the tide of ladies' luncheons and bridge parties is no reason to say that social activities involving ladies are a material purpose of the organization.

Admittedly the dances and football expeditions are social activities. These activities constituted part of the 10 to 16 percent of plaintiff's activities that were social. Since the balance of plaintiff's operations, involving 86 to 90 percent of club participation, were scientific, educational and professional, it is apparent that the social activities were merely incidental to this predominant professional purpose and were not a material purpose of the organization.

Judgment for plaintiff will be granted. The clerk will notify counsel to draft and submit judgment accordingly.