Nathaniel T. Helman, J.
This is a motion for summary judgment in an action for a declaratory judgment to determine (a) whether plaintiff is a social club within the meaning of subdivision 7 of section G46-1.0 of the Amusement Tax Law of the City of New York (Administrative Code of City of New York, § G46-1.0, subd. 7); and (b) whether a revocation by defendant of an exemption theretofore granted to plaintiff under the City Amusement Tax Law was illegal and invalid under article 7 of the regulations governing the City Amusement Tax Law. The defendant cross-moves for summary judgment dismissing the complaint and declaring that the plaintiff is a “ social club ’ ’ within the meaning of section G46-1.0 of said law and therefore subject to the tax imposed under section G46-2.0 of the City Amusement Tax Law.
The plaintiff club was organized on July 9, 1934 under the Membership Corporations Law of New York. Over the years, its primary function has been to serve as an exclusive businessman’s luncheon club. It was founded at the promptings of the owners of the R. C. A. Building in Rockefeller Center as an added incentive to prospective tenants thereof. The *866 owners have made available, dining and bar facilities occupying the 65th floor of the R. C. A. Building, for the club’s exclusive use on Saturdays and during the luncheon and early evening periods on weekdays. Members of the club pay a $200 initiation fee and annual membership dues of $200.
The city tax sought to be imposed herein is derived from, and substantially identical to section 1710 of the Internal Revenue Code (and its 1939 Internal Revenue Code equivalent). The Federal law imposed a 20% tax on membership dues and initiation fees of “ social clubs ”, where such dues are in excess of $10 per year. The city tax counterpart imposes a 5% tax thereon. When the club was first organized the Collector of Internal Revenue ruled that it was not a “ social club ” and thus was exempt from this tax. Eight years later, he reversed this ruling and instructed the club to collect these taxes from its members in the future. Some three years later, he ruled once more that the club was not a social club. Tavo years later, he again reversed himself and ruled that the club was subject to the “social club” taxes. The club then brought an action in the Federal District Court to determine its status and to secure a refund of taxes paid. The court ruled that the club was not a “ social club ” within the meaning of the tax law. (Rockefeller Center Luncheon Club v. Johnson, 131 F. Supp. 703 [S. D. N. Y., 1955].) An appeal from this decision was filed but subsequently withdrawn and no further efforts have been made to date to collect the Federal tax.
Following the enactment of the City Amusement Tax in June, 1954, the Bureau of Excise Taxes of the City of New York joined in confounding the plaintiff. It is the legislative and judicial policy of this State that local taxes should be administered in a manner generally consistent with the comparable Federal taxes on which they are patterned. Cases construing the Federal laws, while not binding on the State courts, should be followed in the interests of uniformity and harmony (see Matter of Rogers, 269 App. Div. 551, affd. 296 N. Y. 676 [1946]). Thus, the Bureau of Excise Taxes, which had initially determined, in November of 1954, that the plaintiff Avas taxable as a “ social club ”, reversed itself following the Rockefeller Center Luncheon Club decision in 1955, and exempted the club from the City Amusement Tax. However, in January, 1963, the bureau again reversed itself, and directed the club to collect the tax on future dues and fees, thereby providing the basis for the instant proceedings.
The several changes in the rulings of the Federal and city tax authorities coincided Avith the rendition of diverse court *867 decisions applying the Federal statute in other cases. If any common principle was to be drawn from this line of cases, it was that, for the purposes of determining the character of any association sought to be taxed as a “ social club ”, almost every club was sui generis: “ But when it comes to determining the classification in which a club falls, there has been considerable difference of opinion. The differences are in the main factual. No two clubs are exactly the same. They differ widely in their purposes and practices. Each must be decided on its own facts (Uptown Club of Manhattan v. United States, 83 F. Supp, 823, 829 [1949]).
In determining the character of such clubs, the courts considered, inter alia, the structural organization of the club, the objectives of its participants which were most directly served by membership and use of its facilities, and the number and type of ‘1 social ’ ’ facilities, other than dining facilities, which were made available to members and their guests. Thus, in determining that the Rockefeller Luncheon Club was not a “ social club ”, the District Court considered the facts that the club did not own or lease any facilities it used, the club had no assets of its own, and that it did not provide those additional facilities incidental to a true social club, e.g., a library, a smoking room, a bar, etc. More importantly, the District Court determined that the individual motivations of the members in belonging to, and using the facilities of, the club, were “business” rather than “social” in nature and this was a sufficient determining factor to classify the club as a “ business ” club.
In 1960, however, a case involving the same question and similar facts, which had been pending in the District Court at about the same time as the Rockefeller Luncheon Club case, reached the U. S. Court of Appeals for the Second Circuit (Down Town Assn. of City of N. Y. v. United States, 278 F. 2d 313, cert. den. 364 U. S. 836). In deciding that the Down Town Association was, by definition, a social club within the meaning of the tax law, the Circuit Court swept away the ad hoc basis for judicial determination of this question, at least in respect of businessman’s luncheon clubs in a situation similar to that of the Rockefeller Center Luncheon Club. In assailing that Circuit Court decision, the plaintiff here attempts to make great moment of the factual distinctions between the two cases. However, in the Down Town Association case, the court noted (p. 314) that: “it is agreed that * * * the activities of appellant for the past forty years have been restricted almost exclusively to serving luncheon on working days from 12:00 noon *868 imtil 2:30 p.m. ’ ’ That the theretofore ‘1 distinguishing ’ ’ factual elements were not deemed controlling, is seen by the court’s own formulation of the issue presented (p. 316): ‘1 whether a businessman’s luncheon club, serving no other function of entertainment, is by definition a social club ” (emphasis added). The Circuit Court answered this question in the affirmative and, in the course of its opinion, expressly rejected the reasoning of the Rockefeller Center Luncheon Club case (supra) in respect of the significance of the motivations of individual members.
It is apparent that, had this Circuit Court opinion been rendered prior to the Rockefeller Center Luncheon Club decision, the latter would have reached a contrary result.
It is equally evident that the Collector of Internal Revenue can now, and could have at any time after the Down Town Assn. decision, assess the tax imposed by section 1710 against the Rockefeller Center Luncheon Club in respect of future membership dues and initiation fees, notwithstanding his failure to perfect an appeal from the Rockefeller Center Luncheon Club decision, his failure to file or publish any formal nonacquiescence in that decision and his inaction since 1955. (See Commissioner of Internal Revenue v. Sunnen, 333 U. S. 591; Bush v. Commissioner of Internal Revenue, 175 F. 2d 391.)
The plaintiff contends, however, that the Bureau of Excise Tax of the City of New York is estopped from making any assessment under the City Amusement Tax based on the decision in the Down Town Assn. case (supra). Plaintiff argues firstly, that the Federal taxing authorities have had ample opportunity to reimpose a “ social club ” tax liability on the club since the 1960 Circuit Court decision but have not chosen to do so. Consequently, plaintiff argues, it would be contrary to the avowed principle of uniformity and harmony in Federal-State tax enforcement to permit the city to independently impose such tax liability. Whatever motives the Collector of Internal Revenue may have for not proceeding against the plaintiff, this court rejects the contention that New York City taxing authorities are to be prevented from collecting a validly imposed tax until their Federal counterpart chooses to act in respect of a comparable Federal tax. But for the voluntary inaction on the part of Internal Revenue, there would be uniformity of tax law enforcement herein. If the lead comes from the local, rather than the Federal, tax authorities, the tax is not thereby nullified. The plaintiff argues secondly, that the Bureau of Excise Taxes is estopped by the binding force of article 7 of regulations issued by the Comptroller for the purpose of administering the City *869 Amusement Tax. This article reads, in pertinent part: “ When a club or organization has been held not to be a ‘ social, athletic or sporting club ’ or organization, it need not thereafter make a return or any further showing with respect to its status under the law, unless it changes the character of its organization or operations, or the purpose for which it was originally created.” In accordance with the foregoing, the Bureau of Excise Taxes, following the decision in the Rockefeller Center Luncheon Club case {supra) issued an exemption to the club, reversing its earlier ruling that the club was subject to the City Amusement Tax. Plaintiff argues that the Comptroller’s regulations have the force and effect of statute and that on the basis of the quoted provision and the bureau’s action thereunder, the bureau’s attempted revocation of the tax exemption was ultra vires.
This contention must also be rejected. Without becoming immersed in the distinctions between “ res judicata ” and ‘1 collateral estoppel ’ ’ which obtain in the area of tax law, suffice it to say that plaintiff’s arguments in favor of administrative finality are simply beside the point in this case. Clearly, the above-quoted regulation sets the limit of plaintiff’s responsibility for record-keeping and reporting in respect of the instant tax. The contention that it also has the force of binding the taxing authority in perpetuity, conflicts with reason and established tax law principles. There is nothing in the regulation itself, nor has plaintiff proffered other authority, which requires a finding that once the Bureau of Excise Taxes has rendered a tax ruling, it is thereafter estopped from correcting a clearly erroneous determination, or from reversing its position in respect of future tax periods based on a change in the applicable tax law (be that by legislative or judicial action).
Accordingly, the plaintiff’s motion for summary judgment is denied and the defendant’s motion for summary judgment is in all respects granted.