## CENTURY ASS'N v. ANDERSON.

District Court, S. D. New York.
May 10, 1935.

Lord, Day & Lord, of New York City (Allan B. A. Bradley and Woodson D. Scott, both of New York City, of counsel), for plaintiff.

Martin Conboy, U. S. Atty., and Ralph E. Stone, Asst. U. S. Atty., both of New York City, for defendant.

HINCKS, District Judge.

This is an action brought by the plaintiff for the recovery of taxes collected during the period from May 1, 1927, to March 31, 1931, in the aggregate sum of $46,381.28, under the authority of the provisions of 26 USCA § 872.

The parties stipulated for trial by a jury of one, and at the close of the evidence each side moved for a directed verdict. This procedure makes a detailed finding of facts unnecessary. Nothwithstanding, a general statement of the considerations which have controlled my decision may serve a useful purpose.

The applicable statute has been construed by Treasury Regulations 43, Article 36, the validity of which is unquestioned. Under this Regulation, I cannot direct a verdict for the plaintiff without finding that "its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose"—in this case, art and literature. Such a finding I cannot reach on the record in this case.

The record includes the plaintiff's year books for each year falling within the taxable period. These year books include character sketches of members recently deceased, and from these sketches it is fully apparent that the club sheltered a social life which was a prized end in itself. To be sure, in this social life the vivid colors in the art gallery may have blended with the mellow background of the library. Its pattern may have been woven on the loom of the arts. But for present purposes it is its existence, rather than its source, that has importance. And the charm of its quality cannot serve to deny the reality of its existence.

The presence of this social feature in the life of the club is also attested in more tangible ways. Space in the club building was generously allocated for social activities. And from the revenues of the club available from dues and endowment, the direct expenditures to support social activities such as the restaurant, etc., substantially exceed the expenditures directly devoted to the service of art and literature.

To be sure, the club has a library in size and quality surpassing that to be expected in a purely social club. Likewise as to its art collection. And the evidence shows that the library and art gallery with its frequent exhibitions are generously patronized by members and guests. But if such facts betoken a devotion to art and literature, the quality of the kitchen and the patronage of the dining room equally demonstrate the presence of social features. And the year books, as indeed the several issues of the club pamphlet or bulletin which are in evidence, are replete with items of purely social interest—consistent only with my conclusion that the social life of the club was an end in itself, though not its only purpose.

This conclusion stands even though I find as fully proved (except for the conclusions of paragraphs 10 and 11) the "Summary of Facts" included in the plaintiff's brief; for every fact included in the summary is consistent with a policy on the part of the club and with a belief on the part of its members that the quality of its social life requires protection and deserves perpetuation. But the conclusion of paragraphs 10 and 11 that the funds for endowment and renovation were motivated solely by zest for art and literature, I cannot admit; for nothing in the evidence convinces me that a delight in the social life of the club was excluded from all part in the moving impulse of the contributors to these funds. Indeed, Exhibit 10 indicates that the renovation fund was wholly used (ex-

cept for a library stack room which was apparently a minor item) for facilities serving the social life of the club. And the income from the endowment fund seems not to be restricted to the direct service of the arts.

To be sure, the presence of social features merely incidental and subordinate to the primary purposes of art and literature would not bar recovery. But of the total physical facilities of the club, of the expenditure of its revenues, and of its services, the part devoted to social ends is too substantial to justify the inference that the social features are incidental merely. Nor can I find evidence that the social activities were subordinate only to the primary purposes. That members were lured to the club by its social attractions does not thereby justify the inference that the spacious social facilities and the well-ordered service of the club were provided for the purpose of increasing attendance at the art gallery or library, if indeed that be important. To be sure, it well may be that scores of club members, each in the exercise of his individual genius, have enriched the artistic and literary life of the community. Conceivably some part of this illumination may have been lit by sparks struck from the Century flint. But if there be any relation between the illumination and the Century spark, it is too remote to permit a finding that the entire social structure of the club was maintained only as a flint from which the creative spark might spring.

Accordingly, the plaintiff's motion for a directed verdict must be denied, and the defendant's motion must be granted, and it is so ordered.