### DUQUESNE CLUB v. BELL.
### SAME v. DRISCOLL.
#### Nos. 7877, 7878.

Circuit Court of Appeals, Third Circuit.

Argued March 18, 1942.

Decided April 13, 1942.

---

Donald J. Marran, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., Charles F. Uhl, U. S. Atty., and Elliott W. Finkel, Asst. U. S. Atty., both of Pittsburgh, Pa., on the brief), for appellants.

Paul Armitage, of New York City (Robert L. Kirkpatrick, of Pittsburgh, Pa., Edward Holloway, of New York City, and George B. Furman, of Washington, D. C., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The plaintiff, Duquesne Club, seeks to recover tax paid in the sums of $5,340.65 and $58,725.89. The two actions were consolidated and tried together. The total represents amounts collected from its members and paid to the Collector of Internal Revenue as taxes on club dues for the years from September 1, 1935 to July 1, 1938. The club made a claim for refund which was duly filed and rejected. It then brought suit in the Western District of Pennsylvania and the learned trial court entered judgments for the plaintiff. The defendants, the Collector and former Acting Collector of Internal Revenue, bring the cases to this Court on appeal.

The statute which controls in this litigation is that which imposes the club dues tax.[1] It provides for a 10% tax on any amount paid as dues or membership fees to any social, athletic, or sporting club or organization if the dues are in excess of $25 a year, and a comparable tax upon initiation fees. The sole question in this case is whether the Duquesne Club is a social club within the meaning of the statute, there being no claim that it is either athletic or sporting. The suggestion was made at argument that the question is one of fact and that the determination thereof by the trial judge was entitled to the same consideration under Federal Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section

---

[1] § 413, Revenue Act of 1928, 26 U.S. C.A. Int.Rev.Acts, page 441, now § 1710, Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 1710.

723c, given to other findings of fact. This point is not well taken. Findings or stipulations with regard to the use made of club property, the nature of that property, the number of members, etc., are findings of evidential facts, and we accept them, as the rule provides, unless clearly erroneous. But whether, upon facts so found, plaintiff is a social club within the meaning of the taxing statute is a finding not within the rule and is reviewable by this Court. The term "social" when used in a statute imposing a tax, necessarily becomes a term of art, even though an elusive one. While we make no pretense of being able to give it a definition which will be self-operative to settle other cases,[2] we must, nevertheless, determine as best we can whether the facts bring this club within the term used in the statute. The facts we take from the trial court; the conclusion upon them must be our own.

■ The plaintiff contends that it is a business, and not a social, club. One may ask, at the outset, what business? The club, itself, is not engaged in any business. It is incorporated under Pennsylvania law as a corporation not for profit, its purpose, as stated in its charter, being the maintenance of a club for social enjoyment. Here, at once, we have a distinction between the plaintiff and one group of organizations which have litigated their liability under this statute. The Treasury Regulations (Article 35), which in this case are entitled to more than usual consideration because of their long standing, and subsequent reenactments of the taxing statute,[3] provide that the purposes and activities of a club and not its name determine its character for the payment of the tax. Thus an organization which starts out as one admittedly not classified as social, such as a commercial club, a motor vehicle owners' association or a society for the study of petroleum chemistry, may become subject to the tax as a social club if it has social features and these become more than merely incidental to "the active furtherance of a different and predominant purpose". Regulations, Article 36. Thus more than one group has lost the freedom from taxation which it might otherwise have enjoyed because its social activities became, in the judgment of the taxing authorities and the courts, too large a part of the whole.[4]

The Duquesne Club does not fall within the genus of the non-social type of organization. Neither its charter nor the life history of the club, as given to the court, show any group or corporate activity of a non-social sort. It is also true that the club, as clubs go, does not provide, as part of club activities, many, or very many, things of the sort usually associated with social clubs. There are no dances, no receptions, no card parties, no bridge parties. While there is a "health department" there are no athletic facilities. Only a few people play cards or billiards. There is a dining room to which wives of members may go, but women may see the facilities of the club in general only on New Year's day. There are no club dinners; there is no entertainment committee. All of this, plus similar evidence not necessary to be marshalled here, certainly shows a limitation of social enterprises in the Duquesne Club. But with equal certainty it does not show any general corporate purpose of the club for business, philanthropy, education or other object which makes the group activity non-taxable upon its dues.

Nor is the club run for a business purpose common to the members of the club. It is true that many of the members are business men; out of a list of 1295 active members 745 are corporation executives, 50 are brokers and 76 are bankers. But these business men are not engaged in any one line of business. The findings of fact state that it is a habit of long standing for men to meet at the club at lunch time "to make contacts, exchange ideas,

[2] "I doubt if it is possible to make any general statement which will not beg the question * * *." L. Hand, J., dissenting in Tidwell v. Anderson, 2 Cir., 1934, 72 F.2d 684, 688.

[3] Union League Club of Chicago v. United States, Ct.Cl.1933, 4 F.Supp. 929.

[4] Town Club of St. Louis v. United States, 8 Cir., 1934, 68 F.2d 620; Quadrangle Club v. United States, 7 Cir., 1933, 64 F.2d 80; Engineer's Club of Philadelphia v. United States, Ct.Cl.1941, 42 F.Supp. 182; Transportation Club of San Francisco v. United States, Ct.Cl. 1936, 17 F.Supp. 201; Chicago Engineers' Club v. United States, Ct.Cl.1935, 9 F.Supp. 680; Union League Club of Chicago v. United States, Ct.Cl.1933, 4 F.Supp. 929; Army and Navy Club of America v. United States, Ct.Cl.1931, 53 F.2d 277; Century Ass'n v. Anderson, D.C.S.D.N.Y.1935, 10 F.Supp. 1005.

and have private conferences, directors' meeting, and other gatherings for the promotion of their business interests". The contacts could be, obviously, with people in the same business enterprise, with competitors in the same line of business or with one or more of the 164 attorneys, 4 judges, 5 ministers, 11 educators, or 38 retired members. The club provides, amid comfortable, well-furnished surroundings, a place where men can conveniently[5] go in the city of Pittsburgh to eat luncheon with other men in the same or different walks of life and indulge in business talk or small talk as they pleased. And this can be done in any one of the 44 dining rooms, of which many are special or private, in the lounge or at any one of the 4 bars of the club. Does the fact that some or many of the members use the club, especially at noon, to talk with others the problems of their own particular business as well as eat their lunch make the club a business and not a social club?

We think it does not, and for two reasons. One is that conversations around dining tables of the individual members upon whatever subject they choose to talk about while they eat has nothing to do with club activity at all. All the club is doing is to provide excellent and enjoyable facilities for these meetings to take place. The second reason is that even if the sole test were whether the activities which were going on in the club were more than incidentally social, there is no proof, and no way of proving, that of the $238,000 worth of food dispensed and the $89,000 worth of beverages consumed in one year, only an incidental portion was over social as distinguished from business enterprises.

The learned trial judge naturally relied for guidance upon the decision of this court in Union Club of Pittsburgh v. Heiner, 3 Cir., 1938, 99 F.2d 259. This Court, as at present constituted, does not agree with the view expressed in the majority opinion in that case and it may be regarded as hereby overruled.

The decisions which have dealt with the application of this statute present a rather confused picture, due perhaps to the necessarily vague character of the concept, for tax purposes, of what is social. One class, already referred to above, is comparatively easy. Those are the cases where the group purpose is non-social, but where the social features have become too important a part of the undertaking to permit continued exemption from the statute. Some others seem to us to go pretty far in what a group of people must do together in order that their activities be called social.[6]

■■ We are prepared to say that an organization, whether incorporated or not, which provides an opportunity for its members to meet each other at mealtimes and partake together of food and drink with conversation on whatever subject pleases them is a social organization.[7] This assumes, of course, an organization the main purpose of which, as is true here, is not other than to provide such an opportunity. Elaborately comfortable quarters may add to the enjoyment of the occasion but do not change its nature. If the members play games together, invite outside guests, either men or women, or add any of the countless things with which people amuse themselves, again the social program becomes more elaborate, but is no more a social program than that of the luncheon of a dozen men about a table without the additional features. We entertain no doubt that the Duquesne Club is a social club within the meaning of the statute.

The judgments of the District Court are reversed.

---

[5] The club house is in the heart of the business section.

[6] Page v. Squantum Ass'n, 1 Cir., 1935, 77 F.2d 918, affirming, D.C.R.I.1934, 7 F.Supp. 815; Tidwell v. Anderson, 2 Cir., 1934, 72 F.2d 684; Whitehall Lunch Club v. United States, Ct.Cl.1934, 9 F.Supp. 132; The Cordon v. United States, Ct. Cl.1931, 46 F.2d 719; Bankers' Club of America, Inc., v. United States, Ct.Cl. 1930, 37 F.2d 982.

[7] Park Club v. United States, Ct.Cl. 1939, 29 F.Supp. 872; Duquesne Club v. United States, Ct.Cl.1938, 23 F.Supp. 781; Yondotega Club v. United States, D.C.E.D.Mich.1938, 384 C.C.H.1938 Fed. Tax Serv. par. 9134; dissenting opinion, L. Hand, J., Tidwell v. Anderson, 2 Cir., 1934, 72 F.2d 684, 687. Cf. Krug v. Rasquin, D.C.E.D.N.Y.1937, 21 F. Supp. 866.