**FURNITURE CLUB OF AMERICA v. UNITED STATES.**

No. 44 C 276.

District Court, N. D. Illinois, E. D.
April 17, 1946.

Charles E. McGuire, of Chicago, Ill., for plaintiff.

J. Albert Woll, U. S. Dist. Atty., of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

This is a civil action brought under Section 1710 of the Internal Revenue Code of 1943, 26 U.S.C.A. Int.Rev.Code, § 1710, for the recovery of $8.80, plus interest, paid by plaintiff as tax on membership dues in the Furniture Club of America. In 1928 the Furniture Club had been granted exemption from payment of tax on dues, which exemption was, on February 23, 1943, revoked by the Commissioner, according to the Government's statement, on the authority of the case of Duquesne Club v. Bell, 3 Cir., 127 F.2d 363, 143 A.L.R. 1377.

Defendant answered the complaint, denying all liability.

Prior to the bringing of this suit the taxpayer had filed with the Commissioner a claim for refund, which claim was rejected. The Government urges that the controversy here arises on the following three principles:

(a) Is the taxpayer, by its failure to make full disclosure of all its evidence to the Commissioner of Internal Revenue, in its claim for refund, now precluded from offering additional evidence before the District Court?

(b) Has the taxpayer assumed the burden of proof which is required under the law?

(c) Is the taxpayer a social club within the meaning of Section 1710 of the Internal Revenue Code, and the applicable regulations thereto, and therefore liable for the payment of the tax on membership dues?

On the first ground the Government insists that the claim for refund filed by the taxpayer with the Commissioner did not set forth in detail all grounds upon which the refund was claimed, and all facts in support thereof, and hence plaintiff is precluded from submitting any of the evidence which it has offered at the trial.

Treasury Regulation No. 111, Sec. 29.-322—3, provides:

"The claim must set forth in detail and under oath each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof. * * * A claim which does not comply with this paragraph will not be considered for any purpose as claim for refund."

The claim for refund sets out:

"Taxpayer is not a social or athletic or sporting club within the meaning of the Federal Code. It is a trade association or Club which is limited solely to persons connected with the furniture industry and has for its objects the encouragment and advancement of the best interests of the furniture industry."

The claim for refund filed by the Furniture Club before the Commissioner first sets out the reason why it believed it was not subject to the tax, namely, that it was not a social club, but was in fact a trade organization, limited solely to persons connected with the furniture industry. The Commissioner, in considering the claim, did not reject it on the ground that the taxpayer had failed to furnish sufficient evidence or details, but on the contrary acted thereon and denied the same. In the case of Belknap v. United States, D.C., 55 F.Supp. 90, 100, the court said:

"It has been several times held that a claim which fairly advises the Commissioner of the nature of the taxpayer's claim and which is not rejected by the Commissioner because of lack of details, but is acted upon by him as sufficient in its general form, complies with the statutory requirement."

See also Lucas v. Fidelity & Columbia Trust Co., 6 Cir., 89 F.2d 945; Reynolds v. McMurray, 10 Cir., 77 F.2d 740; McKesson & Robbins v. Edwards, 2 Cir., 57 F.2d 147.

The Regulation makes no provision for the presentation of evidence before the Commissioner, requiring only that one seeking a refund state the factual basis for his claim in order that the Commissioner may take whatever action is required. In Ronald Press Co. v. Shea, 114 F.2d 453, 455, the Circuit Court of Appeals for the 2nd Circuit said:

"* * * it is fair and reasonable to require one who seeks a refund to state explicitly the factual basis of his claim in order that the Commissioner may take whatever action upon those facts, as affirmed or modified by whatever investigation is proper, which the law requires."

█ Here the Commissioner appears not to have objected to the sufficiency of the facts presented to him, but considered the claim and acted upon it. Inasmuch as the Commissioner acted upon this claim when it was before him, I am of the opinion that it adequately set out the ground upon which refund was claimed, and presented facts sufficient to apprise the Commissioner as to the basis of taxpayer's claim.

The main question before me is whether the taxpayer is a social club within the meaning of Section 1710 of the Internal Revenue Code, which section provides:

"Sec. 1710(a) Internal Revenue Code.

"Rate. There shall be levied, assessed, collected, and paid—

"(1) Dues or membership fees. A tax equivalent to 11 per centum of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year."

Treasury Regulation 43, Section 105.25, thus defines a social club:

"Social Clubs—Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Code, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the the active furtherance of a different and predominant purpose, * * *"

The basic facts are not in serious dispute, and may be summarized as follows: The Furniture Club of America is an Illinois corporation organized in 1924, its charter setting out the object for which it was formed as follows:

"The object for which it is formed is to encourage and advance the best interests of the furniture industry; to promote interest in the manufacture and sale of furniture and knowledge of the industry, both within the industry itself and with the public; to promote good will and better understanding among the members of all branches of the furniture industry; and to provide a common meeting place for the members of the furniture industry and generally to do all things necessary and desirable in furtherance of said objects."

Under the by-laws membership in the Club is limited to those directly engaged in the furniture industry, there being five classifications of membership divided into resident and nonresident, and known as founders, manufacturers, associate members, dealers and secretarial, and that out of a total membership of 2584, 1072 are residents and 1512 are non-residents. No distinction is made between the dues of resident and nonresident members. The Club is a national organization covering all branches of the furniture industry, manufacturers, retail merchants, manufacturers' salesmen, and everyone engaged in the business, and occupies a substantial portion of the seventeenth floor of the building known as the Furniture Mart located at No. 666 Lake Shore Drive, in Chicago, maintaining and operating a cafeteria in which are fed the employees of the various furniture firms occupying space in the Furniture Mart as well as the employees of the Treasury and Navy Departments; a main dining room having a seating capacity of 600 to 650, used for the various meetings held in connection with the furniture industry; a main lounge; a billiard room used by approximately ten to fifteen people each day; a library, containing a current file of furniture periodicals and reference books on furniture, together with a few volumes of fiction donated to the library; a directors' room; a sun room; a barber shop; women's rest room; men's wash room, and the office. All of these rooms are converted into meeting rooms whenever it becomes necessary to so use them. The Club publishes what is known as The Chicago Order Book, which is a directory of the Furniture Mart, and is published twice a year for the January and July market meetings. It also publishes two mimeographed services known as National

Employment Service, Representatives Desiring Lines, and Manufacturers Desiring Representation. The cafeteria and the dining room are the only eating facilities in the Furniture Mart. The cafeteria is open from 8 A. M. to 2:30 P. M. for the use of everyone in the building, including the Navy and Treasury employees. The dining room is operated primarily for the purpose of holding meetings. The cocktail lounge is open on week days from 8 o'clock A. M. to 7 o'clock P. M. The Club itself is open from 8 o'clock A. M. to 6 o'clock P. M., except on occasions when special or scheduled meetings are being held there, and all of its facilities are closed on Sundays and evenings. Ordinarily approximately 100 people, excluding employees of the Treasury and Navy, are served breakfast in the cafeteria and approximately 200 to 250 are served lunch. In the dining room ordinarily about half a dozen people are served breakfast and about 50 to 75 are served lunch, except on Friday, which is known as market day, when between 200 and 250 are served for luncheon. In the cafeteria the average cost of breakfast is 15 cents, and luncheon 40 cents, while in the dining room breakfast averages about 40 cents and luncheon 75 cents. During the war, because of shortage of space, and at the request of the Government, the Furniture Mart in 1943 leased space to the Treasury Department, and in 1942 to the Bureau of Yards and Docks of the Navy Department, and the Club permitted all of these employees to patronize the cafeteria, and the executive officers of the Treasury and Navy were extended the privileges of the Club. The Furniture Mart houses the furniture exhibits of hundreds of manufacturers, thus enabling buyers to look over furniture lines within a limited space of time, instead of being obliged to spend weeks or months in visiting various factories over the country. There are four showings of furniture, called markets, held in the Furniture Mart each year, one in January and one in July, covering two week periods, and one in May and one in November, known as midseason markets, and covering one week periods. Market parties or meetings are held at the Club four times a year, concurrently with the four showings of markets, which all furniture buyers are free to attend. On occasions the facilities of the Club are leased to private outside organizations. The Club also holds two or three golf tournaments each year. The various organized associations of the furniture industry hold an average of 230 meetings a year in the Club quarters, and 300 business meetings of various furniture companies are held on an average each year.

The Government insists that the following factors found in the operation of the Furniture Club indicate without question that it is a profitable social organization:

1. Maintains club rooms and facilities which are finer and larger than required to operate a successful trade organization.

2. Maintains both a dining room and a cafeteria, the latter of which is made available to all tenants and employees in the building without regard to membership.

3. Leases its facilities for profit to private organizations for which it collects rents and makes a charge for food and beverages dispensed.

4. Maintains a standing entertainment committee.

5. Operates a cocktail lounge which is unnecessary for the betterment of the furniture industry.

6. Maintains a barber shop, consisting of four chairs; valet service, shower and bath facilities, library, check room, cigar counter, 13 foot soda fountain, switchboard service, radios, a gallery 20x100 feet in size, and a very fine members' lounge.

7. Extends unlimited guest privileges to its members.

8. Has an average gross income of $254,000, of which approximately 7% is derived from membership dues.

9. Has total average sales of food and beverages of over $210,000 from which it derives an average gross profit of more than $37,000.

10. Operates at an average net profit of over $16,000.

11. Has a surplus of over $33,000 exclusive of equity in memberships as of November 30, 1943.

12. Has a capital furniture and fixture account as of November 30, 1943, of over

$29,000 after depreciation, the original cost of which is unknown, and admits that the original furnishings and equipment of the Club were supplied by the building corporation in which it is located.

13. Derived an income from a dice game operated in the cocktail lounge of over $5700 in the year 1940, and over $4700 in the year 1941.

14. Publishes a book called "The Chicago Order Book" on an average of twice a year in which advertising is sold to members and non-members at an average yearly profit in excess of $26,000.

15. Operates all departments of the Club at a gross profit.

The Club denies that it is a social club within the meaning of the statute, but that it is a trade association or club, membership in which is limited solely to persons connected with the furniture industry, and has for its object the encouragement and advancement of the best interests of that industry.

In the case of Duquesne Club v. Bell, 3 Cir., 127 F.2d 363, 365, 143 A.L.R. 1377, the case upon which the Commissioner reversed his earlier exemption, and on which the Government now primarily relies, the court, in defining a "social club" said:

"The term 'social' when used in a statute imposing a tax, necessarily becomes a term of art, even though an elusive one. While we make no pretense of being able to give it a definition which will be self-operative to settle other cases, we must, nevertheless, determine as best we can whether the facts bring this club within the term used in the statute."

In Tidwell v. Anderson, 2 Cir., 72 F.2d 684, 688, a case involving the question of whether the Men's Faculty Club of Columbia University was a social club, Judge Hand, in a dissenting opinion, in defining a social club, said:

"I doubt if it is possible to make any general statement which will not beg the question."

In the majority opinion in Tidwell v. Anderson, supra, the court said:

"The test of taxability is not whether a club has any social features at all, but whether or not such activities, viewed, of course, in the light of all the circumstances of its existence including the declared purpose of the organization as shown by its constitution or by-laws, if their provisions are enforced, are what in fact provide the real reason for its existence and enable it to secure members and retain them. Another way to put the problem is 'whether the social features of the club involved are merely incidental or whether, on the other hand, they are a material purpose of the organization.' Union League Club of Chicago v. United States, supra [4 F.Supp. 929, 78 Ct. Cl. 351]."

The Furniture Club has no dances or card parties, and no sport or athletic features of any kind, excepting the two or three golf tournaments a year held during the market weeks and participated in by approximately seventy-five of the members. The Club has no sleeping facilities, and maintains no charge accounts for the members, everything being paid for in cash. Normal business of the Club accounts for approximately 30% of the food served in the dining room and cafeteria; and normal business accounts for approximately 25% of the beverages dispensed, the market meetings and other business meetings accounting for the balance. The Club's location would not tend to make it attractive to a large membership whose purpose in becoming members would be to secure a private and convenient place which would be always available for luncheon or dinner and where they might meet and carry on discussions with others engaged in the same walks of life.

The Government, in urging that the Furniture Club is a social club, lays much stress upon the amount of food and beverages dispensed at the Club and the luxurious and sumptuous quarters which it occupies. While it is true that the Club's income is large and its furnishings are elaborate and expensive, the evidence establishes that the Furniture Club is indebted to the Furniture Mart for a large amount of back rent which is now in process of compromise; that the use made of the main dining room, and the cocktail lounge, aside from the average of

530 business or trade meetings held annually in conjunction with the activities of the furniture industry, is negligible; that the entire space occupied by the Furniture Club is frequently converted into meeting rooms to accommodate the trade organization meetings and the market meetings held during the periods when the furniture industry exhibits its products in the Furniture Mart; that the principal day to day business of dispensing food for luncheon and dinner is carried on by the cafeteria, where hundreds of nonmembers of the Club are, as an accommodation, fed daily, but on almost no theory would a cafeteria be classed as a social activity. Nor do I believe that the volume of business carried on by the Club, or the number of social meetings held in its quarters by others, is evidence that it is a social club within the meaning of the statute. Treasury Regulation No. 43, Sec. 105.25, provides that the social activities of a club, in order for it to be classed as a social club, must be held for the *purpose of affording its members an opportunity of congregating for social intercourse.*

I am of the opinion that the evidence has not established that the social functions of the Furniture Club are a material part of its activities, but rather that they are merely incidental and subordinate to the dominant purpose for which the Club was organized. I believe this case comes squarely within the rules laid down in the following cases: Bankers Club of America v. United States, 37 F.2d 982, 69 Ct.Cl. 121; Aldine Club v. United States, 65 Ct.Cl. 315; Chemists Club v. United States, 64 Ct.Cl. 156; Builders Club of Chicago v. United States, 58 F.2d 503, 74 Ct.Cl. 595; and therefore the dues are not subject to tax as a social club.