**UNITED STATES of America,
Appellant,**

v.

**Mitchell B. HOWE, Appellee.**

**No. 19732.**

United States Court of Appeals
Ninth Circuit.

Aug. 5, 1965.

Rehearing Denied Oct. 25, 1965.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Crombie J. D. Garrett, Attys., Dept. of Justice, Washington, D. C., Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Sec., Charles H. Magnuson, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

M. A. Sturges, Newport Beach, Cal., for appellee.

Before BARNES and HAMLEY, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge.

This is an appeal from a judgment in favor of the appellee taxpayer for the amount of excise taxes paid to the Newport Bay Company, doing business as the "Balboa Bay Club", for the use of slip and mooring facilities during the years 1956 and 1957. Two related questions are presented: (1) whether the Balboa Bay Club is a "social, athletic, or sporting club or organization" within the meaning of section 4241(a) of the Internal Revenue Code of 1954[1]; and (2) whether the sums paid by the taxpayer as boat mooring fees constitute "dues" within the meaning of section 4242(a).[2] Jurisdiction was conferred on the district

---

1. Section 4241 of the 1954 Code provides in part:

    "(a) There is hereby imposed—

    "(1) A tax equivalent to 20 percent of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year."

2. Section 4242(a) defines the word "dues" as including "any assessment, irrespective of the purpose for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for any period of more than six days."

court by 28 U.S.C. § 1346, and this court has jurisdiction by virtue of 28 U.S.C. § 1291.

The Newport Bay Company, a California corporation owned principally by two life insurance companies, leases a bayfront site of approximately fifteen acres from the City of Newport Beach. It formed the Balboa Bay Club as a profit-making venture. The object of the club as stated in its bylaws is "to promote out-of-doors recreation and sports for and social activities among its members". A club publication, the Bay Window, describes the club as a "private and restricted club serving its members in the enjoyment of life in the beautiful Balboa-Newport area". Except for the shoreline, the club is surrounded by a high fence and is accessible only through a single gate. Guards are on duty at the gate daily, except Monday when the club is closed, to exclude from the club premises persons who are not members or who have not been granted the privilege of using the club.

There are approximately 1500 dues paying members of the club, 100 life members, and 200 complimentary members. Regular members are required to pay an initiation fee of $300 and annual dues of $180, including the 20% federal excise tax. Non-resident members pay a $50 initiation fee and annual dues of $120. Life and complimentary members are not required to pay either initiation fees or dues.

Club facilities include a club house, rooms and apartments, three dining rooms, a cocktail lounge, two swimming pools, tennis courts, slips and spaces for boats and a launching ramp and small boat hoists.[3]

The application for membership calls for information regarding the applicant's religion, business, family status, citizenship, club and fraternal memberships, and bank. The application also requires references, and makes inquiry as to applicant's ownership of a boat.

The president of the Newport Bay Company appoints the Balboa Bay Club Board of Governors, although the bylaws provide for election by members of the club. Membership on the board is largely honorary—the governors are invited to give suggestions on minor matters and twice a year act as hosts at parties for club members, financed by the club.

Banquet and other facilities of the club are made available to outside groups—commercial, civil and political. These facilities are made available without consulting the board of governors. Rooms and apartments are rented to nonmembers, who are issued guest privilege cards. Beauty and dress shops, to which the public is given access, are located on the club premises, but the patrons of these shops are not permitted to roam about the club.

Club membership carries no interest in the physical properties of the Balboa Bay Club or Newport Bay Company. There are no general meetings of the membership, and the membership is not consulted with respect to matters of policy. The only active committee is one which plans and conducts a monthly party for the members and their guests. Admission to membership and expulsion from the club are controlled by the manager. Membership cannot be transferred. Initiation fees and dues are deposited in the name of Newport Bay Company. No financial report is made to the membership.

The club maintains more than 100 slip or mooring facilities for storage of boats. Except for the guest docks, mooring slips are available only for the use of club members. Because of the demand for

---

3. The receipts for club operations for the year ending December 31, 1958, were as follows:

| | | | |
|---|---|---|---|
| Rentals | $368,067.78 | Beach and pool | 6,756.98 |
| Food | 338,331.00 | Bay Window Magazine | 35,053.29 |
| Beverages | 191,059.50 | Telephone | 13,476.15 |
| Package Liquor Store | 99,288.52 | Dues | 229,009.25 |
| | | Initiation | 27,016.00 |
| | | Other income | 82,586.74 |

slips, it was necessary for members seeking them to place their names on a waiting list. The taxpayer has held a boat slip since 1950 or 1951.

Newport Bay Company built facilities for the Bahia Corinthian Yacht Club, and members of the latter club are permitted to use the Balboa Bay Club's yachting facilities, as well as some of the other facilities of the club. Similar arrangements were made with Pacific Anglers, another sportsman's organization.

The Newport Bay Company filed its federal corporate income tax returns for the years 1956–57, stating therein that its principal activity was a beach and yachting club. It also filed excise tax returns, reporting club dues, fees and slip rentals.

The district court held that the Balboa Bay Club is not a "social, athletic, or sporting club or organization" within the meaning of section 4241 of the Internal Revenue Code; that the club is an organization in outward form only and the establishment has remained in fact a resort hotel operated for profit; and that the sums paid for boat mooring fees are not dues or membership fees.

■ Section 4241(a) does not define the term "social, athletic, or sporting club or organization". Under the applicable regulation, section 101.24 of Treasury Regulation 43 (1941 Ed.), "Every club or organization having social, athletic, or sporting features is presumed to be included within the meaning of the phrase 'any social, athletic, or sporting club or organization', until the contrary has been proved, and the burden of proof is upon it." [4] The status of a club or organization as social, athletic, or sporting within the meaning of the tax statute is largely a question of fact. United States v. Engineers' Club of San Francisco, 9 Cir. 1963, 325 F.2d 204.

■ It has been said that the word "social", as used in the statute, "necessarily becomes a term of art, even though an elusive one." Duquesne Club v. Bell, 3 Cir. 1942, 127 F.2d 363, 365, 143 A.L.R. 1377, cert. den. 317 U.S. 638, 63 S.Ct. 30, 87 L.Ed. 514, rehearing denied 317 U.S. 706, 63 S.Ct. 152, 87 L.Ed. 563.[5] It is generally held that the question of whether a club is "social" depends upon "the extent and nature of the social activities. If a material purpose is social, the organization is a social club, even though it has other important objectives and activities." Downtown Club of Dallas v. United States, 5 Cir. 1957, 240 F.2d 159, 163. In fact, a club may be held to be "social" for the purposes of the taxing statute, although it has a different predominant purpose, if the social activities constitute an important and material part of the life of the organization. Union League Club of Chicago v. United States, 1933, 4 F.Supp. 929, 78 Ct.Cl. 351.[6]

■ The same tests are applied in determining whether or not a club or organization is "athletic or sporting". If the athletic or sporting features of the

4. This regulation also prescribes a procedure whereby a club or organization which claims that it is not in fact social, athletic, or sporting may request a determination that it is not subject to the tax. The Balboa Bay Club itself has not at any time asserted any claim that it is not a "social, athletic or sporting club or organization".

5. Judge Goodrich also points out in this opinion that the "decisions which have dealt with the application of this statute present a rather confused picture, due perhaps to the necessarily vague character of the concept, for tax purposes, of what is social."

6. See also Lake of the Forest Club v. United States, 10 Cir. 1943, 137 F.2d 843, 845, where the court said:
   "It is not necessary that the dominant or major portion of a club's activities be devoted to social or athletic functions to make it a social or athletic club within the meaning of the taxing statute. If the social or athletic features of the club are a material part of its purpose and activities and promote its existence and advancement, it is a social club within the meaning of the Act, and its members are subject to the payment of the tax."

"club" are not merely incidental, but a substantial or essential part of the organization, the fact that the club may have other purposes is immaterial. A primary test is whether the members are "associated together for the common purpose of engaging in a sport with special privileges and facilities." Bunker Hill Country Club v. United States, 1934, 9 F.Supp. 52, 56, 80 Ct.Cl. 375.[7] See also Arner v. Rogan, S.D.Cal., decided May 20, 1940 (40–2 U.S.T.C. par. 9567 at p. 10,421), setting forth a test similar to the one enunciated in Bunker Hill, and Rev. Rul. 58–589, 1958–2 Cum.Bull. 266, 267.

Recognizing that no cases have been cited which are "on all fours" with the instant case, appellee taxpayer argues that Whitehall Lunch Club v. United States, 1934, 9 F.Supp. 132, 80 Ct.Cl. 350, is factually most nearly in point. The Whitehall Lunch Club was organized by a company which built a large office building in downtown New York.[8] The court found that the "predominant activity of the club was the serving of lunches to its members and their guests in such manner as to enable them to come into desired contact with others in a business and professional way * * *". Recognizing that it was a "border-line case", the court held that the social and gymnasium facilities were "only incidental and not material to the purposes or existence of the club" and "especially when used by only a comparatively few members of the club, does not make the dues taxable".

■ It is clear that if the basic purposes and program of an organization are "essentially technical and professional", its nonsocial status is not altered by serving meals and refreshments and limited social activities. United States v. Engineers' Club of San Francisco, supra. The same general rule has been followed in cases such as Whitehall Lunch Club, where the "predominant purposes of the club are to furnish to its members convenient luncheon facilities on business days, as well as a place where they can hold business meetings and conferences, the social features being incidental to these predominant purposes". Merchants Club v. United States, 1946, 66 F.Supp. 126, 106 Ct.Cl. 562. There is no evidence in the instant case of the use of the luncheon facilities of the club by any group for professional or business purposes. On the contrary, the social and athletic features of club were a substantial and essential part of the life of the organization, and the rule followed in Whitehall Luncheon Club and similar cases is not applicable. Duquesne Club v. Bell, supra; Turks Head Club v. Broderick, 1 Cir. 1948, 166 F.2d 877; Park Club v. United States, 1939, 29 F.Supp. 872, 89 Ct.Cl. 483.

■■ The sharing of some of the club facilities with the general public does not necessarily prevent Balboa from being a "club or organization" within the meaning of the statute. In United States v. Anderson, 7 Cir. 1939, 108 F.2d 475, 479, the district court, as here, found that the properties of the club were operated as a hotel and that the "club" was not in fact a club under the statute. In reversing, the court said in part:

"To us, evidence that the members shared their bowling alleys, swimming pool, and bedrooms with non-members does not support the finding that the properties of the Club were operated as a hotel. Sure-

7. In this case it also appeared that the president of the club, which was organized for pecuniary profit, appointed a membership committee from the paying members which under the bylaws was charged with the duty of passing on applications for membership, but the president "seems to have largely controlled the matter." Nevertheless, it was held that the taxpayer was "in fact an exclu-

sive club or organization, although not so exclusive as some."

8. It may be noted that although the club facilities, as here, were not owned by the club membership, but rather by a corporation which had built a large office building in metropolitan New York, this factor was not considered in determining the status of the organization for tax purposes.

ly, such evidence does not support a finding that 'the Club was in fact not a club.' "[9]

It is clear in this sense that the club facilities are not generally available to the public. Those permitted access to particular facilities are not given access to all facilities. The limited use of the facilities by the general public does not support a finding that Balboa is a private resort hotel rather than a "club or organization".

■ In concluding that Balboa was a private resort hotel rather than a "club or organization", the district court relied largely upon the facts that (1) the "club" was a profit making enterprise; (2) that the members had no proprietary interest in the club property; and (3) the membership exercised no control over the management of the club. In considering these factors, it should be noted at the outset that the tax imposed is not on the club or organization itself, or on property held by the club or organization, but rather is an excise tax imposed upon the individual's privilege of membership. Bunker Hill Country Club v. U. S., supra;[10] Kindelan v. United States, S.D.Fla.1964, 233 F.Supp. 557, and cases there cited. "It is the exercise of this personal privilege of the member * * * which the federal statutes,

and rightly we hold, taxes." McCaughn v. Williams, 3 Cir. 1928, 23 F.2d 840.

■ The fact that Balboa is operated at a profit does not in itself alter its status as a "club or organization". No cases have been cited in which this fact has been regarded as significant. On the contrary, it has been held that profit making is not determinative of the status of a "club or organization" within the meaning of the taxing statute. The applicable rule was stated in Shaw v. United States, supra (note 9) as follows:

"Though the statute provides for certain exemptions from the tax, there is no provision which would exclude profit-making organizations or organizations that are operated informally. It would therefore appear that Congress did not intend to exclude this type of organization from the tax, or it would have specifically said so." (P. 88, 633).

See also Bunker Hill Country Club v. United States, supra; Arner v. Rogan, supra.

■ The Commissioner of Internal Revenue has long taken the position that the applicability of the tax is not affected by the fact that a club is operated for profit.[11] The Commissioner's "substantially contemporaneous expressions of opinion are highly relevant and material

9. See also Shaw v. U. S., E.D.Mich., decided April 12, 1963 (63–1 U.S.T.C. par. 15,499), in which the court stated in regard to facilities of a "golf club" which were occasionally made available to the public (p. 88,633): "The fact that the Club facilities were not limited to club members does not change the members' liability for the tax."

10. In Bunker Hill Country Club v. United States, the court said in part:

"It is contended on behalf of plaintiff that although it bore the name of a club, the corporation was not in fact a club, but merely a profit-seeking concern. This is true if we consider the corporation in the abstract and the corporate entity by itself and alone, but this fact does not settle the case. The tax is not upon the corporation, but, * * * upon a privilege, and it ap-

plies to dues or membership fees required of the members of a club or organization. We need not determine whether there was a club in the strict sense of the term, as it is sufficient if there was an organization and upon that point we think the evidence leaves no doubt."

11. "Early in the history of the tax on initiation fees and dues or membership fees paid to a social, athletic, or sporting club or organization, the Internal Revenue Service set forth its position that the applicability of the tax to an amount paid to such a club or organization is not affected by the fact that the club or organization is operated for profit or that the member making the payment may not participate in its management. See S.T. 457, C.B. IV-1, 296 (1925)." (Rev.Rul. 63–3, 1963–1 Cum.Bull. 258, 259).

evidence of the probable general understanding of the times and of the opinions of men who were probably active in the drafting of the statute." White v. Winchester Club, 315 U.S. 32, 41, 62 S.Ct. 425, 430, 86 L.Ed. 619.

Likewise, "(L)ack of the members' proprietary interest in the club property is not determinative". Kindelan v. United States, supra, 233 F.Supp. at 562; Bunker Hill Country Club v. United States, supra; Shaw v. United States, supra. These same cases also hold that lack of managerial control and failure to adhere strictly to the club bylaws do not affect the significant fact that members joined for the common purpose of using the facilities of the club or organization.

▮ Having reached the conclusion that the Balboa Bay Club is a "social, athletic, or sporting club or organization" within the meaning of section 4241(a), it is clear that the payment made by the taxpayer constituted "dues" within the meaning of section 4242(a). The dues tax is an excise tax imposed upon the individual member for the right to repeated and general use of a common club facility for a period of more than six days. As the Supreme Court said in White v. Winchester Club, supra:

"* * * payment of the price of an individual dinner at the club dining room or a single round of golf lacks the element of making common cause inherent in the idea of club activity. But, on the other hand, payment for the right to repeated and general use of a common club facility for an appreciable period of time has that element and amounts to a 'due or membership fee' if the payment is not fixed by each occasion of actual use." (315 U.S. at 41, 62 S.Ct. at 430).

In the instant case the charge for the use of the boat slips or mooring fee was imposed and billed on a monthly basis. An example in the Treasury Regulations is in point. It reads:

"A club organized and operated for the promotion of yachting, and other aquatic sports, and qualifying as a social, athletic, or sporting club owns and maintains docking and mooring facilities for the use of its members. The club makes a charge to each member using the facilities, the amount of the charge depending upon the size of the member's boat and the location of the docking and mooring facilities used. The docking and mooring facilities are considered to be social, athletic, or sporting privileges or facilities, since they are so closely associated with the yachting and other aquatic activities for which the club was created as to partake of the nature of those activities. Charges made by the club for these facilities constitute dues or membership fees if the period for which the charge is made is more than 6 days." (Treasury Regulations on Facilities and Services Excise Tax, Section 49.4242–1(c), Example 5).

It was held in Cohan v. United States, E.D.Mich.1961, 198 F.Supp. 591, that the dues tax was applicable to charges made by the Detroit Yacht Club for boat-wells and lockers. In Knoll Golf Club v. United States, D.N.J.1959, 179 F.Supp. 377, the court held that a golf locker was "an aid, advantage or convenience" or "facility" for the "sport of golf as well as for the later 'social' or 'sporting' privileges made available by the Club." See also Hoke v. United States, S.D. W.Va.1963, 215 F.Supp. 942.

We conclude (1) that appellee taxpayer has failed to sustain his burden of showing that the Balboa Yacht Club was not a "social, athletic, or sporting club or organization" within the meaning of section 4241(a); and (2) that the sums paid by the appellee constituted dues within the meaning of section 4242(a).

Judgment reversed.