Ethel **COHEN**, Executrix of the Estate
of Harry L. Cohen, Deceased,

v.

The **UNITED STATES**.

No. 340–65.

United States Court of Claims.

July 20, 1967.

J. P. Janetatos, Washington, D. C., for
plaintiff. Walter A. Slowinski and
Baker & McKenzie, Washington, D. C.,
of counsel.

Edward B. Greensfelder, Jr., Washing-
ton, D. C., with whom was Asst. Atty.
Gen. Mitchell Rogovin, for defendant.
Philip R. Miller, Washington, D. C., of
counsel.

Before COWEN, Chief Judge, and
LARAMORE, DURFEE, DAVIS, COL-
LINS, SKELTON, and NICHOLS, Judg-
es.

SKELTON, Judge.

Plaintiff, Harry L. Cohen, brought
this suit to recover the sum of $10.50,
plus interest, from the United States,
claiming that such sum represents an
overpayment by him of Federal excise
tax to the Internal Revenue Service for
the period from September 1, 1964 to
November 30, 1964, in connection with
his membership in the Woodmont Coun-
try Club (hereinafter called "Club"), at
Rockville, Maryland. After this suit was
filed, plaintiff, Harry L. Cohen, died and
the Executrix of his estate, Ethel Cohen,
was substituted as plaintiff.

The Club was a social, athletic, and
sporting club whose facilities were avail-
able only to its members. Its facilities
consisted of the clubhouse with various
dining and grill rooms, lounges, locker
rooms, card rooms, two eighteen hole
golf courses, ten tennis courts, a swim-
ming pool, and other facilities usually
furnished to members by a country club.
It served food and beverages in the vari-

ous dining room and grills maintained by it.

The plaintiff was a Class A member of the Club and as such was required by the rules of the Club to pay monthly dues in the sum of $35.00, together with the excise tax of 20 per cent on such dues, amounting to the total sum of $42.00. These dues and taxes were paid during the period involved in this case and are not in any way involved in this controversy.

At the semi-annual meeting of the membership of the Club held June 27, 1962, an amendment to the Club-by-laws was adopted which provided as follows:

The Board of Governors shall have authority to impose a monthly charge on active members, determined by reference to their spending in the preceding month, exclusive of tips and sales tax, in the restaurant and/or bars of this Club, not in excess of the following schedule:

### Class A Members

| Restaurant-Bar monthly spending— exclusive of gratuity and sales tax | Monthly charge (plus government tax) |
|---|---|
| 0–0 | $20.00 |
| $0.01 to $5.00 | 17.50 |
| 5.01 to 10.00 | 12.50 |
| 10.01 to 15.00 | 7.50 |
| 15.01 to 19.99 | 2.50 |
| 20.00 and up | .00 |

\*     \*     \*     \*     \*     \*

It was agreed by stipulation of the parties that the purpose of this amendment to the by-laws was to encourage increased attendance at the Club and that the $17.51 minimum monthly payment was required as a condition to continuing membership in the Club.

As may be seen from the above schedule, if a member spent nothing for food or drink during a given month, he was assessed a charge of $20.00. If he spent any amount from 1 cent up to $5.00, he was assessed $17.50. If his spending was between $5.01 and $10.00, he was

charged $12.50. If his spending was between $10.01 and $15.00, the charge was $7.50. If he spent between $15.01 and $19.99, the charge was $2.50 and if he spent more than $20.00, no monthly charge was made.

On first reading this schedule, it would appear that the minimum monthly payment was $20.00 and that if any excise tax was due, it should be levied on this amount. However, a closer examination of the schedule reveals that the very least amount of money that a member could spend and keep his membership in force was $17.51, which would be arrived at by his spending 1 cent for food or drink and $17.50 in cash. Accordingly, it was agreed between the parties that $17.51 was the minimum monthly payment which was required of a member as a condition to continuing his membership in the Club. This requirement was in force during the period of time involved in this case.

During the months of September, October, and November 1964, the plaintiff spent the amounts of $78.10, $34.05, and $25.35, respectively, for food and drink at the Club. On January 26, 1965, the Club paid excise taxes in the sum of $10.50 to the Internal Revenue Service representing the 20 per cent excise tax rate on club dues as applied to $17.51, the minimum monthly payment required of the plaintiff as a condition to his continuing membership in the Club, and the Club, in turn, collected the $10.50 from the plaintiff.

On March 17, 1965, the plaintiff filed a timely claim for refund of such alleged tax in the sum of $10.50. On September 30, 1965, the District Director not having acted on such claim, the plaintiff filed this suit in this court to recover the $10.50 plus interest.

In this case the plaintiff contends that since he spent more than $20.00 for food and drink during each of the three months involved, he was not required to pay any dues or assessments over and above the regular $35.00 dues and that the money that he spent for food and beverages was not dues or assessments

and consequently he should not be required to pay any excise tax on any part of the money that he spent at the restaurant and bar of the Club during such months.

The plaintiff points out that on October 23, 1962, the Commissioner of Internal Revenue issued a private ruling to the Club to the effect that dues taxes do not apply to charges made for food and beverages at the Club.[1] However, the defendant counters with the statement that this ruling was revoked by the Commissioner of Internal Revenue on August 19, 1964.[2]

The defendant contends that the $17.51 minimum monthly charge is includable within the broad statutory definition of dues, since such minimum charge was a regular and periodic obligatory payment imposed upon all the club members for the privilege of using the Club's social, athletic, and sporting facilities. In support of this position, the defendant in-

vokes sections 4241 and 4242 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 4241, 4242 (1964) and Treasury Regulations on Facilities and Services Excise Tax § 49.4242–1, together with examples shown therein.

The tax in question is imposed by § 4241(a) (1) which provides:

(a) Rate.

There is hereby imposed—
(1) Dues or membership fees.
A tax equivalent to 20 percent of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

The term "dues" is defined by § 4242 (a) as follows:

(a) Dues.

As used in this part the term "dues" includes any assessment, irrespective

1. The pertinent part of such ruling which is attached to the stipulation of the parties as Exhibit A, is as follows:

"We have consistently held that amounts paid for food and drink in a social, athletic, or sporting club or organization are not subject to the dues tax unless a mandatory minimum expenditure for such items has been previously set by such club or organization. It appears that the total amount paid by a member of the Woodmont Country Club for food and beverages is not a required minimum expenditure for such items, nor is it required as a condition to the continued enjoyment of the privileges and facilities of the club. The information indicates that the amounts spent by a member for food and beverages during the period of a month is the basis for determining whether the member will be required to pay an additional amount for that month. It is our conclusion that the dues tax imposed by section 4241(a) (1) of the Code does not apply to the charges for food and beverages made against the members of the club under the circumstances described. However, the tax does apply to any additional amounts required to be paid where the member's purchases of food and beverages are less than certain designated amounts. The fact that a member may be relieved of the assessment

for a period of one to four months during the year would be immaterial."

2. This revocation is attached to the stipulation of the parties as Exhibit B and is as follows:

"This is in reference to that part of our letter dated October 23, 1962, in which we held that the dues tax imposed by section 4241(a) (1) of the Code did not apply to the charges for food and beverages made against the members of the Woodmont Country Club, Rockville, Maryland.

We have given extensive study to the question of the applicability of the dues tax to monthly assessments levied on a graduated scale by a social, athletic, or sporting club against its members whose expenditures for food and beverages fall within designated amounts set forth in a schedule of expenditures and assessments. It is now our conclusion that the proper basis on which to compute the tax should be the mandatory minimum payment required by any member under the schedule. This conforms to the position taken in Revenue Ruling 64–204, which appears in Internal Revenue Bulletin 1964–28, at page 26. A copy of this bulletin is enclosed for your information.

Accordingly, that part of our ruling of October 23, 1962, dealing with charges for food and beverages by the Woodmont Country Club is hereby revoked."

of the purpose for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for any period of more than six days; * * *

■ The sole question for resolution, therefore, is whether the required minimum monthly payments of $17.51 made by the taxpayer to the Woodmont Country Club are "dues" within the meaning of § 4242(a) and thus subject to the tax imposed by § 4241(a)(1) of the Internal Revenue Code of 1954. We hold that such payments are dues and are taxable.

■ A proper starting point in determining whether certain payments made to a club are taxable is the oft-cited case of White v. Winchester Country Club, 315 U.S. 32, 41, 62 S.Ct. 425, 430, 86 L.Ed. 619 (1942), where the Supreme Court in holding payments subject to tax, uses the following language:

Consideration of the nature of club activity is a necessary preliminary to the formulation of a test of what constitutes a "due or membership fee." So far as finances go, the fundamental notion of club activity is that operating expenses are shared without insistence upon equivalence between the proportion of an individual's contributions and the proportion of the benefits he receives. Thus, on the one hand, payment of the price of an individual dinner at the club dining room or of a single round of golf lacks the element of making common cause inherent in the idea of club activity. But, on the other hand, payment for the right to repeated and general use of a common club facility for an appreciable period of time has that element and amounts to a "due or membership fee" if the payment is not fixed by each occasion of actual use. Such was the case here, and we therefore hold that the payments in question were subject to the tax.

While the definition of dues now found in § 4242(a) had its genesis in the Revenue Act of 1941, c. 412, § 543(b), 55 Stat. 687, and was not under scrutiny in the Winchester Country Club case, that amendment merely broadened the scope of the definition of "dues" to include certain fees and assessments not previously within the grasp of the tax. Boots and Saddles, Inc. v. United States, 66–2 USTC ¶ 15, 710 (E.D.Mich.1966); Boyden v. United States, 218 F.Supp. 220, 222 (D.C.Mass.1963); H.Rep. No. 1040, 77th Cong., 1st Sess., 54 (1941–2 Cum. Bull. 413, 455); S.Rep. No. 673, Part I, 77th Cong., 1st Sess., 48 (1941–2 Cum. Bull. 466, 502–03).

Subsequent to the decision in Winchester Country Club, supra, most courts that have had this issue posed to them have also made the distinction between obligatory payments and payments made by a club member where there was a necessary equivalence between the payment and the benefit received. Boots and Saddles, Inc. v. United States, supra; "The Benedicts" v. United States, 234 F.Supp. 1 (W.D. N.C.1964); Boyden v. United States, supra. In the former instance—where the payment had to be made whether or not the member ever availed himself of the club's facilities—tax liability was found. "The Benedicts" v. United States, supra; Boyden v. United States, supra.

■ That view is consistent with the generally accepted principle that the dues tax is an excise tax imposed not on the club, or organization itself, but on the privilege of membership, whether or not the right to use the club's facilities which flows therefrom is actually exercised. Boyden v. United States, supra, at 222 of 218 F.Supp.; United States v. Howe, 349 F.2d 483, 488 (9th Cir. 1965); McCaughn v. Williams, 23 F.2d 840, 841 (3d Cir. 1928), cert. denied, 276 U.S. 629, 48 S.Ct. 322, 72 L.Ed. 740. See also, Epstein v. United States, 357 F.2d 928, 934 n. 4, 174 Ct.Cl. 1158, 1169 n. 4 (1966).

In the latter instance—where the payments were of the isolated and casual character and dependent upon participation in a given event or activity—they have been held not to be dues subject to

the tax. E. g., Porter v. United States, 303 F.2d 67 (5th Cir. 1962).

The main determinant, common to the cases referred to previously, which is used as a yardstick for measuring tax liability in like circumstances is the inquiry whether the payments made by a club member were mandatory and were required to be made without regard to the actual use of the club's social and athletic facilities.

In applying this test to the case at bar, we note that this is not a case of numerous club activities some of which may be participated in by a member and some not, with a consequent adjustment of dues and assessments to bring about a causal relation between the proportion of an individual's contributions and the value of other benefit he receives. The minimum monthly payment of $17.51 is a payment required as a condition of continued membership, "as a device for imposing on each member a minimum contribution as his share of the operating expense of maintaining a club activity."

Boyden v. United States, supra, at 222 of 218 F.Supp. If a member did not pay this minimum sum, it is apparent that he would forfeit his privilege of engaging in social and athletic activities at the club.

It is evident that the right of a member to eat and drink at private facilities maintained by the club on its premises is a social privilege or facility offered by the club. Also, required minimum monthly payments not necessarily equated to the use of the facilities made by the member are clearly "any charges for social privileges or facilities * * * for any period of more than six days" within the meaning of the language present in § 4242(a). See Boyden v. United States, supra; "The Benedicts" v. United States, supra.

In addition to being "charges," however, the obligatory payments in question are also "assessments." Garden City Golf Club v. Corwin, 62 F.2d 246 (2d Cir. 1932).[3]

3. This analysis is also in accord with the Treasury Regulations applicable to the instant case. Treas.Reg. § 49.4242–1 (1961) is as follows:

§ 49.4242–1 Definition; dues or membership fees

(a) In general. The term "dues or membership fees", as used in the regulations in this part, means all charges made by a social, athletic, or sporting club or organization which are commonly understood to constitute dues or membership fees, as well as all other charges required to be paid to such a club or organization for the privilege of being a member of the club or organization or a member of a particular membership class. The term also includes—

(1) Any assessment made by a social, athletic, or sporting club or organization, irrespective of the purpose for which made, and

(2) All charges made by a social, athletic, or sporting club or organization for (i) social privileges or facilities for any period of more than 6 days (whether or not consecutive), or (ii) golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities for any period of more than 6 days (whether. or not consecutive).

In determining whether a charge by such a club or organization constitutes dues or membership fees within the meaning of subparagraph (2) of this paragraph, the test is whether payment of the charge confers the right to use a social, athletic, or sporting privilege or facility of the club or organization for the prescribed period. It is immaterial whether the privilege or facility is one for which a charge is mandatory, even though the member chooses not to avail himself of the privilege or facility, or whether the privilege or facility is one for which a charge is made only if the member, at his own election, chooses to have the privilege or facility made available to him. Any privilege or facility offered by a social, athletic, or sporting club or organization which is so directly related to a social, athletic, or sporting activity in which the club is engaged, or for which it was created, as to partake of the nature of the activity itself is considered to be a social, athletic, or sporting privilege or facility. This is true even though such privilege or facility, if considered entirely apart from any social, athletic, or sporting activity, would not in and of itself constitute a social, athletic, or sporting privilege or facility.

The taxpayer, however, relies heavily upon the cases of Albritton v. Phinney, 12 AFTR 2d 6338 (W.D.Tex.1963), and Buerger v. United States, 244 F.Supp. 1 (W.D.Pa.1965).

In *Albritton,* which is clearly distinguishable, a deposit of $10 was required of each club member to pay for his food and drink expenses in the club restaurant. No part of the deposit was forfeited if not used, as any unused portion was returned or credited to the member. The quantity of food or drink consumed was up to each individual member, and the payments could not be said to constitute payment to defray club expenses. They were, therefore, held not taxable.

In *Buerger,* the taxpayer was subject to a club resolution which established a $20 minimum on purchases for food and beverages. If, at the end of each month any member had not made purchases of $20 or more from the dining room and bar, a charge representing the difference between what he had spent and $20 was imposed upon such member. If, however, he had purchased food and drink worth $20 or more, no charge was imposed. The payment of this $20 monthly minimum was a condition of membership. As in the instant case, the plaintiff made purchases in excess of the monthly minimum charge and was never billed for any amount over and above his actual purchases. The court held, in effect, that to subject these payments to the dues tax would be to tax a mere threat of an assessment, and, accordingly, they were not taxable.[4]

This conclusion is in conflict with the regulations quoted in footnote 3, and especially with Example (1). The only difference between Example (1) and the *Buerger* case is that in the Example the member was required to spend $200 for food and drink, whereas in' *Buerger* he was required to spend $20 for these items. In each case, if the member spent less than these respective amounts, he was billed for the difference. Example (1) states:

\* \* \* This charge of $200 [$20 in *Buerger*] constitutes dues or membership fees, inasmuch as such charge must be paid for the privilege of being a member of the club. [Parenthetical reference to *Buerger* supplied.]

As the regulations are not an unreasonable interpretation of the statute, they must be sustained. See Boots and Saddles, Inc. v. United States, supra.[5]

The great weight of authority in this area and also, in our judgment, a result which is more in harmony with the statu-

---

(However, see § 49.4243–2 for the exemption provided in respect of amounts paid for certain capital improvements.)

(b) Initiation fees, fines, etc. The term "dues or membership fees" does not include initiation fees. Neither does the term include fines imposed for misconduct or violation of rules. However, the term does include a penalty incurred for failure to make prompt payment of dues or membership fees since such a penalty is considered to be an increase in the amount of the dues or membership fees required to be paid by the member.

(c) Examples. The application of this section may be illustrated by the following examples:

Example (1). A social club operates a restaurant and bar for the use of its members. The club requires of each member a minimum expenditure during the year of $200 for food or drink. If a member does not make actual expenditures totaling $200, he is billed for an additional amount equal to the difference between his actual expenditures and $200. This charge of $200 constitutes dues or membership fees, inasmuch as such charge must be paid for the privilege of being a member of the club.

4. It is pertinent to note at this juncture that no case citation or other authority is mentioned by the court in *Buerger,* supra, in support of its decision.

5. Some decisions have given even a broader interpretation to the concept of "dues" than that espoused in the *Winchester Country Club* case. See Johnston v. United States, 337 F.2d 708 (1st Cir. 1964), wherein the court said:

"Whether the fee paid for participation in the Maugus Club mixed bowling league fits the Court's definition of 'dues' in the *Winchester Country Club* case need not concern us, for it fits squarely within the statutory definition in § 4242(a), supra, of the Revenue Code of 1954 with which we are here concerned." Id. at 710.

tory scheme and legislative history,[6] is illustrated by the decision in Boyden v. United States, supra.

In that case in addition to annual dues, each active member was required to pay a restaurant deposit in the amount of $50 per year. (Later, it was to be paid semiannually.) If a member did not exhaust the $50 deposit, no part was returned to him and it was retained by the club as income.

The court held that the restaurant deposit was squarely within the concept of "dues and membership fees." As alluded to earlier, the court stressed the substantial nature of the payment rather than the name by which it was designated and the fact that it was a condition precedent to the retention of club membership. Its character was held not to be changed by the fact that the member may subsequently obtain his full money's worth by use of the club's facilities.

The basis for the tax here is also that the payment is one which is required for the retention of membership in the club, and must be paid whether or not the member ever used the club's dining and bar facilities. The fact that the Club decided to defray a particular kind of expense by the method of payment involved here cannot alter the fact that the minimum monthly charge of $17.51 is of the same nature as the more general monthly dues. This was not, we hold, a mere threat of an assessment. It was an assessment whether paid in cash or included in whatever amount was expended for food and drink in excess of $20. Only if the member spent an amount less than $20 would he be subject to being assessed *separately* and on a graduated scale. This does not change the controlling fact that a payment of

the minimum sum of $17.51 was obligatory, and thus assessed.

In summary, the payments involved here were both "assessments" and "charges" and as such, the entire minimum monthly payment is dues subject to the 20 per cent tax imposed by § 4241(a) (1).

Accordingly, the defendant's motion for summary judgment is granted, the plaintiff's cross motion is denied, and the petition is dismissed.

---

**6.** In Malat v. Riddell, 383 U.S. 569, 571–572, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966), the Court said:

"As we have often said, 'the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses.' * * * Departure from a literal reading of statutory language may, on occasion, be indicated by relevant internal evidence of the statute itself and necessary in order to effect the legislative purpose. * * * But this is not such an occasion."
Neither does the instant case present such an occasion as the statute was enacted to clarify and broaden its predecessor and is to be given its intended sphere of operation.