William M. GIBBONS, d/b/a Timber Lake Country Club

v.

UNITED STATES of America.

William M. GIBBONS and David E. Gibbons, d/b/a Timber Lake Country Club

v.

UNITED STATES of America.

Civ. Nos. P–2621, P–2622.

United States District Court
S. D. Illinois, N. D.

Dec. 26, 1967.

Edward J. O'Donnell, Peoria, Ill., for plaintiff.

Richard E. Eagleton, U. S. Atty., Peoria, Ill., for defendant.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

These two tax refund suits, which have been consolidated for decision on completely stipulated facts,[1] present two questions: 1) whether the Timber Lake

---

1. The plaintiff in Civil Action No. P–2621 is William M. Gibbons. The plaintiffs in Civil Action No. P–2622 are William M. Gibbons and David E. Gibbons. The essential facts in both cases are the same, except that during the fourth quarter of 1957, and throughout 1958, the Timber Lake Country Club was owned as a partnership by William and David Gibbons; and on January 1, 1959, William Gibbons purchased the interest of David Gibbons, terminating the partnership.

Country Club was a "social, athletic, or sporting club or organization" within the meaning of § 4241 of the 1954 Internal Revenue Code; and 2) whether, if it was, any portion of the club dues paid during the first, second, and third quarters of 1959 was assessed for capital improvements and was therefore exempted under § 4243(b) of the Internal Revenue Code of 1954 from the otherwise applicable federal excise tax.[2]

## I

█ § 4241 provided in relevant part:

(a) *Rate.*—There is hereby imposed—

(1) *Dues or membership fees.*—A tax equivalent to 20 percent of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

The court has reviewed numerous cases in which courts have struggled to define what constitutes a "social club." It would serve no useful purpose to discuss at length the opinions therein because it is apparent that the decisions turned on the particular facts of the respective cases. What is clear is that the courts have held organizations to be social clubs within the meaning of § 4241 if there is an association or substantial commingling of a defined group of individuals for a common purpose or objective. E. g., United States v. Howe, 349 F.2d 483 (CCA 9th 1965); Epstein v. United States, 357 F.2d 928, 174 Ct.Cl. 1158 (1966). The stipulated facts herein clearly show that the Timber Lake Country Club was promoted and operated as a "private club with limited membership" and that club members paid their dues in excess of $10 per year for the unlimited privilege of commingling for social, athletic, and sporting purposes (Stip. Par. 3 and 4). A prospective member had to fill out an application for membership; and while the Gibbons brothers had the sole right to accept or reject the application, in fact they consulted club members before doing so, and applicants were usually accepted only if there was no substantial member objection (Stip. Par. 3b). Members through committees elected by the membership sponsored dances and other social events (Stip. Par. 8). The members were informed of the various social events by means of a publication which was distributed to the members (Stip. Par. 8).

█ Relying heavily on Rev.Rul. 63–3, 1963–1 CB 473,[3] plaintiffs urge that the fact that "occasionally they would allow a person [other than a member] to use the facilities of the club for a day upon payment of a fee" (Stip. Par. 5), made Timber Lake Country Club more a public amusement house than a club within the meaning of the law. The fact, however, is that few non-members other than guests of members ever did use the facilities. Certainly, the proprietors did not promote use of the facilities by the public on a daily fee basis (Stip. Par. 5).

Moreover, the Court of Appeals for the Seventh Circuit in United States v. Anderson, 108 F.2d 475 (1939), has rejected the argument that an organization ceased

---

2. Both of these Code sections were repealed in 1965 (79 Stat. 145).

3. Privately owned and operated for profit. —M Club, a privately owned and controlled organization operated for profit, offers its members certain sporting facilities. Only members and their guests are entitled to use the facilities of the club, and all applications for membership must be approved by a board of directors appointed by the club owners.
N, a privately owned organization, operates certain sporting facilities for profit. The facilities are open to the general pub-

lic upon payment of a fee each time they use the facilities. However, persons paying a specified annual amount are designated as "members" and are permitted use of the facilities for a year without payment of an additional amount. Otherwise, no special privileges are conferred upon these persons.
*Held*, M Club is a "social, athletic, or sporting club or organization" within the meaning of section 4241 of the Internal Revenue Code of 1954. However, N is not considered to be a "social, athletic, or sporting club or organization" within the meaning of that section.

to be a social club when some members of the general public also used the club facilities. In *Anderson* the public use was far more substantial and extensive than that stipulated herein. This court is bound by that decision and finds that the dues paid to the Timber Lake Country Club during the period in question were subject to the tax.

## II

 § 4243(b) provided:

(b) *Assessments for Capital Improvements.*—Notwithstanding any other provision of this part, there shall be exempted from the provisions of section 4241 any assessment paid for the construction or reconstruction of any social, athletic, or sporting facility (or for the construction or reconstruction of any capital addition to, or capital improvement of, any such facility).

Timber Lake members were not told that any specific portion or proportion of their dues would be set aside or used for capital improvements and no amount was set aside for any of the purposes mentioned in the statutory exemption. Instead all dues income was mingled with gross receipts from the operations of the club. While Exhibit C to the stipulation shows a letter from Mr. William Gibbons to club members which sets out a number of improvements to be made in succeeding months and years, it is apparent that no specific appropriation was made in advance for any such purposes. The plaintiff argues that a specific advance designation was not necessary and would have the court look to the amount of money actually expended for capital improvements. It is argued that if in fact the proprietor paid out sums for capital improvements and such sums could be traced from the dues received from members, then they are entitled to the statutory exemption. Under the interpretation urged by plaintiff, a member would be liable for the excise tax on all of his dues when paid, but would be subject to a refund of a part thereof if the proprietor of the club, thereafter at his personal whim, did actually spend some of his own money for capital improvements.

The court does not believe that the language of section 4243(b) permits such interpretation. An "assessment paid for" any purpose seems clearly to presuppose knowledge by the payor and the payee of both the purpose and the amount or proportion therefor at the time of payment. Thus, it is necessary for any part of a general dues payment to a club to be eligible for exemption from taxation as an assessment for capital improvements under the statute in question, that the amount or proportion to be used for capital improvements must be stated at the time of "assessment" and earmarked for that purpose at the time of receipt. As that was admittedly not the situation here, no refund can be directed.

For the reasons set out above, judgment in both cases is entered for the defendant at plaintiffs' cost.